**Raymond G. NYDAM, Executor,
Plaintiff, Appellee,**

v.

**Joseph LENNERTON, Jr., etc.,
and Joseph F. Fontaine, etc.,
Defendants, Appellants.**

No. 91–1395.

United States Court of Appeals,
First Circuit.

Heard Sept. 13, 1991.

Decided Nov. 4, 1991.

Kevin B. Coyle with whom Coyle, Dunbar & Geoffrion, Springfield, Mass., was on brief, for defendants, appellants.

Jacob Oppewal, Whitinsville, Mass., for plaintiff, appellee.

Before BREYER, Chief Judge,
BOWNES, Senior Circuit Judge, and
LOUGHLIN,* Senior District Judge.

LOUGHLIN, Senior District Judge.

This action is brought by Raymond Nydam, son and executor of the estate of Peter E. Nydam. Named as defendants were Joseph Lennerton Jr. and Joseph Fontaine, both Leicester police officers, the Town of Leicester, Leicester's Chief of Police and individual members of the Board of Selectmen. Suit was brought alleging police misconduct, use of excessive force, false arrest and violation of 42 U.S.C. § 1983 and state law negligence claims under Massachusetts General Laws, ch. 258.

Officer Lennerton, in the early morning hours of August 26, 1986, activated his blue lights to stop Nydam, an eighty year old man because of what the officer thought was erratic operation by Nydam of his motor vehicle. After Nydam was stopped, a loud argument ensued which awakened Carol Gordon, a nearby resident. Carol Gordon testified that Lennerton was loudly and profanely demanding to see Nydam's papers.

During the course of the argument Nydam asked Lennerton to show him his identification as a police officer while Nydam was looking for his registration in his glove compartment. Nydam was maced, pulled from his car and then thrown against the car. Nydam at this time was protesting to Lennerton to be careful as he had a bad

leg. Lennerton, who was thirty-seven years old and weighed 185 pounds at the time of the incident, testified that Nydam knocked him down.

Lennerton radioed for assistance and shortly thereafter Officer Fontaine arrived. Lennerton and Fontaine handcuffed Nydam's hands behind his back and then pushed or shoved him into the back of the cruiser. Nydam complained that his arm hurt. When Nydam was removed from the cruiser he fell on the driveway, striking his head. Nydam was semi-conscious and was removed to the hospital by ambulance. He remained in the hospital for nine days and never returned to his home. Nydam suffered a fractured arm and bruises of the cervical region and torso. He died on December 15, 1987 from causes unrelated to this incident.

Nydam was charged with the following offenses: assault and battery upon a police officer, Mass.Gen.L. ch. 265, § 13A; operating a motor vehicle while intoxicated, Mass.Gen.L. ch. 90, § 24; refusal to produce license and registration when requested to do so by a police officer, Mass.Gen.L. ch. 90, § 25; and failure to keep his motor vehicle within marked lanes, Mass.Gen.L. ch. 89, § 4A.

There were no sobriety tests taken at the scene. Subsequently it was determined that Nydam was not under the influence of alcohol, but suffered from Alzheimer's disease. It was determined by a psychiatrist appointed by the court that Nydam was incapable of assisting in his own defense due to his suffering from Alzheimer's disease. All charges were then dropped against Nydam.

The court awarded partial summary judgment for all aspects of the Monell claim. The Chief of Police and Selectmen of Leicester were dismissed as defendants. Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (local governments were intended to be included among the "persons" to which § 1983 applies) overruling Monroe v.

* Of the District of New Hampshire, sitting by designation.

*Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

The jury returned the following verdicts.

Plaintiff was awarded compensatory damages in the amount of $65,000.00 and punitive damages in the amount of $200,-000.00 for a total verdict of $265,000.00. Of this amount $15,000.00 in compensatory damages for abuse of process were awarded against the defendants, Joseph Lennerton, Jr. and Joseph Fontaine, jointly and severally. $50,000.00 in compensatory damages were awarded against the defendant Joseph Lennerton, Jr. Finally, punitive damages were awarded against defendants Joseph Lennerton, Jr. and Joseph Fontaine. In accordance with the jury verdict each was required to pay $100,000.00.

The defendants moved for a new trial alleging that the verdict was against the weight of the evidence, the award of punitive damages was inappropriate and that the damages were excessive. The defendants while disputing liability for excessive force, do not appeal the award of $15,000 in compensatory damages.

*Discussion*

■■■The district court may grant a motion for judgment notwithstanding the verdict only upon its determination that the evidence could lead a reasonable person to only one conclusion. *Conway v. Electro Switch Corp.,* 825 F.2d 593, 598 (1st Cir. 1987).

"This determination must be made without evaluating the credibility of the witnesses or the weight of the evidence and without attempting to resolve conflicting testimony." *Id.* (citing *Wildman v. Lerner Stores Corp.,* 771 F.2d 605, 607 (1st Cir. 1985); *Cazzola v. Codman & Shurtleff, Inc.,* 751 F.2d 53, 54 (1st Cir.1984); *Hubbard v. Faros Fisheries, Inc.,* 626 F.2d 196, 199 (1st Cir.1980)).

"[A] trial judge should not act merely as a '13th juror' and set a verdict aside simply because he would have reached a different result had he been the trier of fact. Rather the judge's duty is to exercise a more limited discretion. He should not interfere with the verdict 'unless it is quite clear that

the jury has reached a seriously erroneous result.'" *Coffran v. Hitchcock Clinic, Inc.,* 683 F.2d 5, 6 (1st Cir.1982) (citing *Borras v. Sea Land Service,* 586 F.2d 881, 887 (1st Cir.1978)).

Appellate review of a denial of judgment n.o.v. is governed by the same stringent rules as those that apply to the district court. *See Aggarwal v. Ponce School of Medicine,* 837 F.2d 17, 19 (1st Cir.1988).

This court has often stated its reluctance to alter a jury damages award:

We rarely will override the jury's judgment on the appropriate amount of damages to be awarded. [T]he jury's otherwise supportable verdict stands unless [it is] grossly excessive or shocking to the conscience. We accord broad discretion to the trial court's decision to affirm the jury's award of damages because of [the] court's greater familiarity with local community standards and with the witnesses' demeanor at the trial.

*Hall v. Ochs,* 817 F.2d 920, 927 (1st Cir. 1987) (citing *Brown v. Freedman Baking Co., Inc.,* 810 F.2d 6, 11 (1st Cir.1987)).

■■■ There was ample evidence to support the findings of the jury that an eighty year old man afflicted with Alzheimer's disease was maced, brutally beaten and suffered serious injuries resulting in his hospitalization for nine days.

We conclude that the trial judge did not abuse his discretion in refusing to set aside the verdict. The motion to set aside the verdict is denied.

*New Trial*

The defendants appeal their motion for a new trial claiming that the verdict was against the weight of the evidence, the award of punitive damages was inappropriate, and that the damages awarded were excessive.

The reasoning of this court on the denial of defendants' motion for a new trial is equally dispositive of their contention that the verdict was against the weight of the evidence.

■■■ Appellant argues that damages awarded by the jury were excessive. "In a challenge to a jury award, [the appellate

court] is limited to examining whether evidence in the record supports the verdict. If the jury award has a rational basis in evidence, we must affirm it." *O'Brien v. Papa Gino's Of America, Inc.*, 780 F.2d 1067, 1076 (1st Cir.1986).

"We do not reverse a jury verdict for excessiveness except on 'the strongest of showings.' The jury's award is not to be disturbed unless it is entirely disproportionate to the injury sustained. We have expressed the extent of distortion that warrants intervention by requiring such awards to be so large as to 'shock the judicial conscience,' 'so gross or inordinately large as to be contrary to right reason,' so exaggerated as to indicate 'bias, passion, prejudice, corruption, or other improper motive,' or as 'clearly exceed[ing] that amount *any* reasonable man could feel the claimant entitled to.'" *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir.1983) (citations omitted).

■ Translating legal damages into money damages—especially in cases which involve few significant items of measurable economic loss—is a matter peculiarly within a jury's ken.

"A punitive award 'may be an integral part of the remedy in a civil rights action.'" *O'Neill v. Krzeminski*, 839 F.2d 9, 13 (2d Cir.1988) (citing *Zarcone v. Perry*, 572 F.2d 52, 54 (2d Cir.1978); *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)).

Commenting on the propriety of a punitive damages jury award in a § 1983 action, the Second Circuit stated, "the abuse of official power here was intolerable, and when a jury has dealt with it severely, as it should, we will not draw fine lines to restrain its dispensation of justice." *Zarcone v. Perry*, 572 F.2d at 57. A punitive damages award of $185,000 against two defendant officers who fractured plaintiff's nose and lacerated his face and head while he was handcuffed was not excessive.

■ Reference to other awards in similar cases is proper to determine if a damage award is excessive. *Martell v. Board-*

*walk Enterprises, Inc.*, 748 F.2d 740, 752–53 (2d Cir.1984).

The contention that Nydam resisted arrest was before the jury and they apparently discounted or disbelieved this evidence. It stretches credulity that an 80 year old man, albeit suffering from Alzheimer's disease, would resist arrest by two fairly youthful police officers.

The Supreme Court has held that a jury may be permitted to assess punitive damages in an action under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith*, 461 U.S. at 56, 103 S.Ct. at 1640. *See also Miller v. Town of Hull, Mass.*, 878 F.2d 523, 534 (1st Cir.), *cert. denied*, 493 U.S. 976, 110 S.Ct. 501, 107 L.Ed.2d 504 (1989) (quoting *Smith*).

■ Under the circumstances of this case neither the compensatory nor punitive damages awarded by the jury were excessive. In analyzing the evidence before the jury, the verdict was, if anything, one of restraint. The hubristic conduct of the defendant police officers resulted in physical and emotional injuries which far exceeded acceptable bounds of police behavior.

Defendants' motion for a new trial on the grounds that compensatory and punitive damages were excessive are denied.

*Attorneys Fees*

Plaintiff's counsel seeks counsel fees and costs pursuant to 42 U.S.C. § 1988 arising from police misconduct.

42 U.S.C. § 1988 provides:

"... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

*See Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).

In *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984), the Supreme Court noted:

[T]he burden is on the fee applicant to produce satisfactory evidence ... that the requested rates are in line with those pre-

vailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.

The trial court awarded Attorneys Oppewal and Bergin 236.4 hours at $100.00 an hour, amounting to $23,640.00. The court also awarded a witness fee of $40.00, a fee for investigative services of $1,107.00 and $1,519.85 for additional fees and costs for a combined total of $26,306.85.

Defendants claim that services for which compensation is sought were not rendered in support of the civil rights action, and are not compensable. These included services for the criminal defense of Peter Nydam and the negligence action pursued under Mass.Gen.Laws ch. 258, § 2.

Secondly, defendants allege that some of the services for which compensation are sought are clerical and not legal services.

The third contention is that the plaintiff cannot recover for legal services performed prosecuting theories of liability upon which the plaintiff did not prevail as to defendants, against whom the plaintiff did not prevail.

■ The court in its discretion may allow a fee, but that discretion is not without limit. The prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render an award unjust." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). The standard of review on appeal from an award of attorney's fees is whether the district court judge abused his discretion, and an appellate court may reverse an award only if it finds a manifest abuse. *Bordanaro v. McLeod*, 871 F.2d 1151, 1167 (1st Cir.), *cert. denied*, 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989).

The defendants cite *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), for their contention that time spent pursuing claims upon which the party did not prevail should be eliminated. Defendants suggest that the pursuit of § 1983 claims gave rise to various state causes of action, but the claims upon which plaintiff did not prevail are noncompensa-

ble under § 1988. The defendants rely on *Hensley* to support their assertions that the hours spent on the unsuccessful claims should be excluded in considering the amount of a "reasonable" fee. *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943.

In *Hensley*, the Supreme Court held that where a lawsuit consists of related claims a plaintiff who has won substantial relief should not have his attorney's fees reduced merely because the District Court did not adopt every contention raised. In analyzing the relatedness of claims, the court considered the extenuating factors. *Id.* at 434, 103 S.Ct. at 1940.

Moreover, the Supreme Court recognized the difficulty in determining the "relatedness" issue. Thus, the court stated:

Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a *common core of facts* or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended in litigation. *Id.* at 435, 103 S.Ct. at 1940 (emphasis added).

■ This analysis is apposite to the case before the court. Further, the analysis supports the underlying purpose of 42 U.S.C. § 1988 encouraging attorneys to undertake civil rights actions, in view of the ethical duty of zealous representation.

We fail to see an abuse of discretion in light of the district court's finding that the negligence and *Monell* claims were closely intermingled and arose from the same common core of facts as the § 1983 claim.

In *Wojtkowski v. Cade*, 725 F.2d 127, 130 (1st Cir.1984), the court made it clear that in calculating "a reasonable attorney's fees ... the court may bring to bear its knowledge and experience concerning both the cost of attorneys in its market area and the time demands of the particular case...."

This is so because "[t]he district court has 'intimate knowledge of the services rendered' and the actual demands of the case as tried." *Id.* (citing *McManama v. Lukhard,* 616 F.2d 727, 729 (4th Cir.1980)).

The overall record establishes that the district court painstakingly and thoughtfully brought all its judicial experience to bear in focusing upon the issue of "reasonable" attorney's fees. The lodestar calculus was ably applied to its award of attorney's fees. Thus, "[w]here ... [a] district court [has] carefully weighed the correct factors and arrived at a result within a supportable range, the appellate court will not interfere." *Wojtkowski,* 725 F.2d at 131 (citing *King v. Greenblatt,* 560 F.2d 1024, 1028 (1st Cir.1977)).

After applying the lodestar analysis, the district court reduced the overall award of attorney's fees and costs. The plaintiff originally submitted a request for fees amounting to 14.8% of the overall award. Ultimately, the reduction in fees amounted to less than 10% of the overall award. Considering the result attained, a total verdict of $265,000.00, it is somewhat puzzling to the court that defendants' counsel should complain about attorney's fees being excessive, especially after the district court reduced them somewhat substantially. The court finds that there was no abuse of discretion.

We affirm.