UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1406

DANIA R. KEISLING,

Plaintiff, Appellee,

v.

SER-JOBS FOR PROGRESS, INC., ET AL.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Raymond J. Pettine, Senior U.S. District Judge]

Before

Breyer, Chief Judge,

Boudin, Circuit Judge,

and Pollak,* Senior District Judge.

Paul L. Foster for appellants.

Alicia Murphy with whom Rosemary Healey and Edwards & Angell were

on brief for appellee.

March 29, 1994

* Of the Eastern District of Pennsylvania, sitting by designation.

POLLAK, District Judge. This case involves a claim under the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

sections 621 et seq. (1988), with a pendent claim under

sections 28-5-1 et seq. of the Rhode Island General Laws. The

plaintiff, Dania Keisling, claims that her firing by the

corporate defendant, SER-Jobs for Progress, Inc. ("SER"), was

the result of unlawful age discrimination on the part of SER

and individual defendants Alma F. Green and Lois K. Turner.

Finding liability both under ADEA and under state law, the

jury (1) awarded Keisling $32,874 in compensatory damages

against all three defendants, and (2) awarded Keisling $50,000

in exemplary damages against defendant Green and $25,000 in

exemplary damages against defendant Turner. Memorandum and

Order at 1 (D.R.I. Mar. 11, 1993). Appendix of Defendants-

Appellants (hereinafter "A.") 121.1 SER, Green and Turner

now appeal. Because we conclude that the district court erred

1 Rhode Island law permits the award of "punitive
damages" in cases of discrimination involving "reckless
indifference" to the plaintiff's rights. See R.I. Gen. L.

28-5-29.1. Keisling sought an additional award of $32,874
in "liquidated damages" pursuant to the ADEA, 29 U.S.C.
626(c). The district court denied this request, reasoning
that because liquidated damages under the ADEA are punitive
in nature, permitting Keisling both liquidated damages under
federal law and punitive damages under state law would
result in a double recovery for a single wrong. A. 121-23.

-2-

in excluding testimony proffered by the defendants, we reverse

and remand for a new trial.

I. FACTS

The record developed at trial would support factual

findings as follows:

SER is a non-profit Rhode Island social service

agency whose operations are primarily geared to Rhode Island's

Hispanic population. Dania Keisling became an associate

director of SER in 1984. From 1984 until mid-1989, Keisling's

work was supervised by Carlos Pedro, SER's executive director.

Keisling also had extensive dealings with Alma Green, who was

the president of SER's board of directors. During this time

period, Keisling received regular increases in pay, and as SER

expanded its services Keisling's job responsibilities

increased dramatically. Keisling did not receive formal

evaluations of her performance; she testified, however, that

"[m]any times" Green "said that I was always there and I was

doing a real good job" and "that I was always actually running

that agency." Transcript of Defendants-Appellants

(hereinafter "T.") 45.

-3-

In July 1989, Pedro resigned as executive director,

and SER began the chore of finding a replacement. Both

Keisling and Lynn Trudell, SER's other associate director,

applied to fill the vacancy. Keisling testified that after

she applied for the position she had at least two

conversations with Green in which Green made age-related

comments. As recounted by Keisling, the comments were:

Sure, you can run that agency but do you want to do
that at your age?

Sure, you can run this agency and you have done it
but do you want to do that and do you want that
aggravation at your age?

T. 49. Two other witnesses, an independent bookkeeper

employed by SER and the executive director of a sister agency,

testified that Green made similar comments about Keisling to

them during the time that SER was searching for a new

executive director. T. 182, 218.

In November 1989, SER hired Dr. Lois K. Turner as

executive consultant to the Board of Directors, a position in

which Turner functioned essentially as interim executive

director, supervising the daily operation of the agency in

consultation with Green. Among other duties, Dr. Turner was

responsible for performing an extensive review of the

functioning of SER and for assisting in the hiring of a new

executive director. A. 164-65. In reviewing the operation of

-4-

the agency, Turner purportedly discovered some problems with

Keisling's performance. On January 19, 1990, Turner met with

Keisling and advised her of matters that had come to Turner's

attention. Specifically, Turner told Keisling that staff

members had complained that Keisling had yelled at them and

had used profanity and obscene gestures. Turner also asserted

that Keisling had failed to complete some of her tasks in a

timely manner. T. 58-9.

Turner memorialized the meeting with Keisling in a

memorandum dated February 1, 1990 -- a memorandum that

Keisling stated she received on February 9. The memorandum

repeated the charges of inappropriate behavior, and also set

forth a number of alleged deficiencies in Keisling's

performance. In the memorandum, Turner gave Keisling a

thirty-day probationary period, beginning February 1, in which

to demonstrate appropriate professional behavior and to

improve her performance. A. 133, 135. Keisling responded to

the February 1 memorandum with memoranda of her own, one to

the Board of Directors and one to her personnel file, in which

she attempted to refute Turner's allegations. A. 136, 138.

On March 2, at the conclusion of the probationary

period, Turner and Green met with Keisling and informed her

that her employment was to be terminated. They presented

-5-

Keisling with a memorandum, dated March 2, stating that Green

and the Executive Committee of SER had endorsed Turner's

decision to terminate Keisling's employment. A. 144. They

also presented Keisling with a letter from Turner, also dated

March 2, detailing additional instances of alleged

inappropriate behavior and inadequate performance. A. 141.

Keisling was given an opportunity to appeal her termination to

the Board of Directors, which upheld the termination. At the

time she was terminated, Keisling was over 40 years old.

II. ANALYSIS

From the jury's verdict in favor of plaintiff

Keisling, the three defendants have appealed. Four grounds

for appeal are advanced. Of these, it is only necessary to

address two in detail.2 First, defendants claim that the

district court erred in failing to grant their post-trial

motion for judgment as a matter of law. Second, they argue

that the district court committed prejudicial error in

excluding testimony regarding age-related statements allegedly

made by defendant Green and by Keisling herself. These

arguments will be addressed in turn.

A. Denial of Motion for Judgment as a Matter of Law

2 The remaining two issues are discussed infra, note

10.

-6-

Defendants argue that the district court erred in

denying their motion for judgment as a matter of law. They

claim that Keisling failed to introduce evidence at trial

sufficient even to establish a prima facie case of

discrimination, much less to carry her ultimate burden of

proof.

Defendants' argument suffers from two flaws. First,

as Keisling points out, defendants failed to preserve their

argument properly for appeal by failing to make a motion for

judgment as a matter of law at the close of all evidence.

Rule 50(a) of the Federal Rules of Civil Procedure permits a

motion for judgment as a matter of law to be made "at any time

before submission of the case to the jury." Defendants, in

compliance with this rule, made a motion for judgment as a

matter of law at the close of Keisling's case. T. 289. That

motion, however, was insufficient to preserve the issue that

defendants are now seeking to present on appeal. If a

defendant wishes to renew a motion for judgment as a matter of

law at the post-trial stage, with a view to having denial of

that motion considered by the court of appeals, the defendant

is required to have moved for judgment as a matter of law at

-7-

the close of all the evidence. Fed. R. Civ. P. 50(b).3

Requiring the motion to be made at the close of all the

evidence gives the opposing party an opportunity to respond to

any evidentiary deficiencies noted by the motion by seeking to

reopen the evidence prior to submission of the case to the

jury. See Fed. R. Civ. P. 50(a) advisory committee's note

(1991). This court therefore has held that it will not

consider claims of insufficient evidence unless the district

court was presented with a motion for judgment as a matter of

law at the close of all the evidence. See Jusino v. Zayas,

875 F.2d 986, 991 (1st Cir. 1989).

At oral argument, defendants contended that the rule

of Jusino should not apply in the present case. They claimed

that the comments of the district judge in denying defendants'

motion at the close of plaintiff's case led them to believe

that their motion was preserved for post-verdict consideration

by both the district court and this court, and that their

3 Rule 50(b) of the Federal Rules of Civil Procedure
states:

Whenever a motion for a judgment as a matter of law
made at the close of all the evidence is denied or for
any reason is not granted, the court is deemed to have
submitted the action to the jury subject to a later
determination of the legal questions raised by the
motion.

-8-

reasonable reliance on the district judge's comments removed

the necessity for a renewed motion at the close of all the

evidence.4

We are far from persuaded that the district judge's

comments could reasonably have been taken as an assurance by

the judge that defendants need not move for judgment as a

matter of law at the close of all the evidence. However,

assuming arguendo that defendants did not read too much into

the judge's comments, defendants' asserted reliance on those

comments was, nonetheless, insufficient to obviate the need

for conformity with the requirement that the adequacy of the

4 The comments of the district judge on which
defendants claim to have relied were as follows: First,
after hearing argument on the defendants' motion, the court
stated:

That's a tough standard and I think applying that
standard, I think, counsel for the plaintiff was
correct in her assertions and I will deny your motion
in that regard and of course note an exception for you.

T. 309. Shortly thereafter, after a brief discussion of the
standards for the imposition of punitive damages on a
corporation, the court stated:

Maybe we are not going to resolve this case until after
the jury returns a verdict. If they return a verdict
for the plaintiff, I can see where I'm going to have
some very interesting post-trial briefs. If they
return a verdict for the defendant, then the Appellate
Court can worry about it from that point on.

Appendix at T. 313.

-9-

plaintiff's case be challenged at the close of all the

evidence. To be sure, the obligation to conform to the

requirement is not absolute, but this court has emphasized

that only very unusual circumstances will justify treating a

motion at the close of the plaintiff's case as a surrogate for

a motion at the close of all the evidence. Those

circumstances -- which, we have said, constitute a "very

narrow exception," Della Grotta v. Rhode Island, 781 F.2d

343, 350 (1st Cir. 1986), to the rule that the motion be

renewed at the close of all the evidence -- are presented "in

a case ... combining judicial assurance concerning

preservation of rights at the time of the motion and ... brief

and inconsequential evidence following the motion. . . ."

Bayamon Thom McAn, Inc. v. Miranda, 409 F. 2d 968, 972 (1st

Cir. 1969); Beaumont v. Morgan, 427 F.2d 667, 670 (1st Cir.

1970). In the present case, whatever reliance the district

court's statements may have induced, the evidence that

defendants presented following the district court's ruling on

their motion was undeniably substantial and relevant to the

issues raised in the motion. If defendants believed,

following the presentation of their case, that the totality of

the evidence permitted only one conclusion, it was incumbent

upon them to make that belief known to the court and to permit

-10-

Keisling an opportunity to respond prior to the submission of

the case to the jury. Having failed to come within the "very

narrow exception" of Della Grotta, Bayamon and Beaumont,

defendants have waived the right to contend before this court

that they are entitled to judgment as a matter of law.

Second, even if defendants had preserved the right

to present their argument to this court, they have failed to

meet the stringent standards necessary for judgment as a

matter of law. A court is without authority to set aside a

jury verdict and direct the entry of a contrary verdict unless

the evidence points so strongly and overwhelmingly in favor of

the moving party that no reasonable jury could have returned a

verdict adverse to that party. See Acevedo-Diaz v. Aponte, 1

F.3d 62, 66 (1st Cir. 1993). In determining whether this

standard has been met, the court must examine the evidence in

the light most favorable to the non-moving party; in addition,

the non-moving party is entitled to "the benefit of all

inferences which the evidence fairly supports, even though

contrary inferences might reasonably be drawn." Cochrane v.

Quattrocci, 949 F.2d 11, 12 n.1 (1st Cir. 1991) (quoting

Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S.

690, 696 (1962)), cert. denied, --- U.S. ---, 112 S. Ct. 2965

(1992).

-11-

Under the now-familiar standard first set forth in

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973),

and later adapted for cases under the ADEA, a plaintiff may

establish a prima facie case by showing that (1) she was over

40 years of age, (2) she suffered an adverse job action, (3)

her job responsibilities were assumed by another person,

demonstrating the employer's continuing need for an individual

of the plaintiff's skills, and (4) she was qualified for the

position that she held and performing well enough to rule out

the possibility that the adverse job action was for inadequate

job performance.5 See Olivera v. Nestle Puerto Rico, Inc.,

922 F.2d 43, 45 (1st Cir. 1990). Defendants concede that

Keisling established the first two elements of the prima facie

case, namely that she was over 40 years of age and that she

was terminated by SER. They argue, however, that Keisling

failed to introduce sufficient evidence to establish the final

two elements of the prima facie case, and that they are

therefore entitled to judgment as a matter of law.

5 This court does not require a plaintiff under the
ADEA to establish, as an element of her prima facie case,

that she was replaced by an individual younger than herself,
or by someone outside the protected class. See Hebert v.

Mohawk Rubber Co., 872 F.2d 1104, 1110 n.10 (1st Cir. 1989).

-12-

Defendants argue that Keisling failed to establish

the third element of the prima facie case, namely, that her

job responsibilities were assumed by another. In making this

argument, defendants note that SER did not hire a replacement

for Keisling. This fact, however, is not determinative.

Keisling presented evidence that Lynn Trudell, SER's other

associate director, assumed Keisling's duties after Keisling's

discharge. This evidence is sufficient to show, for the

purpose of establishing a prima facie case, that SER had a

"continued need for the same services and skills." Loeb v.

Textron, Inc., 600 F.2d 1003, 1013 (1st Cir. 1979); see also

Kale v. Combined Ins. Co. of America, 861 F.2d 746, 760 (1st

Cir. 1988). Keisling was not required to show that SER hired

a replacement or specifically designated an existing employee

as such. See Loeb, 600 F.2d at 1013 n.11. Defendants have

failed to show that, viewing the evidence in a light most

favorable to Keisling, no reasonable jury could conclude that

Keisling established the third element of the prima facie

case.

Defendants also argue that Keisling failed to

establish the fourth element of the prima facie case, namely,

that her performance was sufficient to meet the legitimate

expectations of SER. Defendants contend that the only

-13-

evidence Keisling offered of her acceptable job performance

was her own assessment of her achievements and abilities.

Defendants are correct that such evidence, standing alone, is

insufficient to establish the fourth element of the prima

facie case; indeed, were evidence of this type sufficient, it

is a rare plaintiff who would fail to establish a prima facie

case. Defendants fail, however, to take into account the

entirety of Keisling's evidence. Keisling testified that

while employed at SER, her responsibilities were increased

substantially, she received positive feedback (e.g., from

defendant Green) regarding her performance, and she received

regular pay increases. Keisling also introduced a favorable

letter of recommendation written by SER's former executive

director, Carlos Pedro. It is true that this evidence does

not extend fully to the time at which Keisling was discharged.

The evidence does, however, support an inference that

Keisling's job performance at the time of her discharge was

adequate to meet SER's legitimate needs. Keisling thus

succeeded in establishing the fourth element of the prima

facie case.

Defendants note that they introduced evidence that,

at the time of her discharge, Keisling's job performance was

inadequate. They argue that Keisling failed to overcome this

-14-

evidence, and that this failure amounted to a failure to

establish a prima facie case. This argument fails to

apprehend the burden-shifting structure of an ADEA case.

Under McDonnell Douglas, the burden initially is on the

plaintiff to establish all the elements of the prima facie

case. Once the plaintiff has done so, the burden of

production shifts to the defendants, and the defendants are

required to present evidence of a legitimate reason for the

adverse job action taken against the plaintiff, evidence that

explodes the presumption of discrimination created by the

prima facie case. If the defendants carry their burden of

production, the plaintiff must respond to the defendant's

evidence and demonstrate that the adverse action suffered by

the plaintiff was indeed the product of illegal

discrimination. See St. Mary's Honor Ctr. v. Hicks, --- U.S.

---, 113 S. Ct. 2742, 2747 (1993). The shifting of the burden

of production in an ADEA case does not always correspond

neatly to the orderly presentation of evidence at trial.

Thus, it is not unusual for a plaintiff to introduce in her

case-in-chief evidence that, within the McDonnell Douglas

framework, is best understood as responsive to evidence

introduced by defendants to counter the prima facie case. The

fact that a plaintiff introduces such evidence in her case-in-

-15-

chief, rather than waiting for the defendants to present their

case, does not mean that anticipation and rebuttal of the

defendants' case constitute an element of the prima facie

case. To hold otherwise would belie the assertion of the

Supreme Court that the burden of establishing a prima facie

case is "not onerous." See Texas Dep't of Community Affairs

v. Burdine, 450 U.S. 248, 253 (1981); see also Mesnick v.

General Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991);

Villanueva v. Wellesley College, 930 F.2d 124, 127 (1st Cir.),

cert. denied, --- U.S. ---, 112 S. Ct. 181 (1991).

Viewed in this manner, the proper question for

defendants to ask is not whether Keisling has failed to

establish a prima facie case, but rather whether Keisling has

failed to carry the ultimate burden of persuasion upon

consideration of all the evidence presented at trial. For the

purposes of this appeal, we must conclude that Keisling

succeeded in meeting her burden. Granted, the evidence of

discrimination that Keisling presented was far from

overwhelming. It is certainly conceivable that a reasonable

jury, viewing all the evidence, could conclude that Keisling's

discharge was a legitimate response to inappropriate on-the-

job behavior, or even that her discharge, while unfair, was

not the product of illegal age discrimination. It seems to

-16-

us, however, that a determination of the cause for Keisling's

termination requires a weighing of the credibility of

defendants' witnesses, who described Keisling's alleged

inappropriate behavior, against that of Keisling, who denied

that she ever behaved improperly. Such assessments are

peculiarly within the province of the jury. An appellate

court may not interpose a judgment different from that

obtained at trial simply because it disagrees with the jury's

credibility determinations. See Nydam v. Lennerton, 948 F.2d

808, 810 (1st Cir. 1991).

In sum, both because defendants' post-trial motion

for judgment as a matter of law was procedurally defective and

because it was, on the record made at trial, inapposite, we

conclude that the district court did not err in denying the

motion.

B. Exclusion of Testimony Concerning Statements by

Plaintiff and Defendant Green

During the presentation of defendants' case,

defendants presented testimony by SER's former executive

director, Carlos Pedro. In the course of Pedro's testimony,

defendants' counsel questioned Pedro concerning statements

made by both Keisling and defendant Alma Green. In

particular, defendants' counsel sought to elicit from Pedro

-17-

statements by Keisling and Green to the effect that each

respectively was getting too old to endure the travails of

their jobs. Defendants' counsel posed the question in two

forms, as follows:

Q: During from [sic] the period of 1987 until 1989
when you were employed at the agency, did you have
occasion, while in the presence of Alma Green or
Dania Keisling, to hear conversation where the words
to the effect were [sic] "I'm getting too old for
this crap or too old for this stuff" were used?

Q: In 1987 until 1989 when you left the agency,
Mr. Pedro, did you ever hear conversation in the
agency where reference to age was used?

T. 514-15. Keisling's counsel objected to both questions as

calling for hearsay responses, and the district court

sustained the objections. Defendants now claim that the

exclusion of the testimony was error warranting a new trial.

We agree. Rule 801(c) of the Federal Rules of

Evidence defines hearsay as "a statement, other than one made

by the declarant while testifying at the trial or hearing,

offered in evidence to prove the truth of the matter

asserted." In counsel's questions to Pedro, counsel plainly

was attempting to elicit from Pedro testimony concerning

statements made out of court; to that extent, the hearsay

-18-

rules were implicated.6 The alleged statements of Keisling

and Green were not being offered to prove the truth of the

matter asserted, however. Defendants did not ask Pedro about

the statements in an attempt to prove that Keisling and Green

were, indeed, too old for their jobs. Rather, in seeking to

elicit Pedro's testimony as to statements by Green, defendants

would have invited the jury to infer that this was a common

form of speech for Green, one that she applied to herself as

well as to others, and that when she directed similar comments

at Keisling she did not do so with discriminatory animus. And

if Pedro were to have testified that Keisling herself had made

similar comments,7 that might have strengthened the inference

6 Defendants' assertion that the questions did not
call for a hearsay response because they simply required a
"yes" or "no" answer is flawed. A party cannot evade the
dictates of the hearsay rules simply by having an attorney,
rather than the witness, present the alleged out-of-court
statement and then asking the witness, "Is that what you
heard?" To the extent that the questions posed called for
Pedro to affirm or deny the content of an out-of-court
statement, the questions fell within the purview of Rule
801.

7 Keisling contends that defendants did not argue to
the district court that Keisling herself had made comments
referring to her age, and that defendants therefore cannot
present that argument to this court. Keisling's contention
is plainly wrong. Not only does the initial question posed
by defendants' counsel directly refer to statements by
Keisling, but in the colloquy that followed the questions,
defendant's counsel told the court, in response to the
court's determination that the questions called for hearsay,

-19-

that Green's comments were devoid of animus. As defendants

contend in their brief, such testimony could have provided a

predicate for arguing "that whatever comments green [sic] and

Keisling may have made regarding being 'too old' for this job

were not reflections of age 'animus' but rather indicative of

frustration with a difficult job in a difficult economic

environment." Appellants' Brief at 17. Because the

statements were not offered to prove the truth of the matter

asserted therein, they were not hearsay within the meaning of

Rule 801(c).8

In addition to establishing that the proffered

testimony was not hearsay, defendants must establish that they

were prejudiced by the exclusion of the testimony. See

Fernandez v. Leonard, 963 F.2d 459, 465 (1st Cir. 1992). We

believe that they have done so. As we have said, Keisling's

evidence of discrimination, while sufficient to withstand a

"[I]n the case that those statements are attributed to
either a defendant or a plaintiff, I believe they are
clearly admissible." T. 515-16. That argument may not have
been a model of clarity, and it is true that counsel did not
elaborate with respect to statements by Keisling. Counsel's
presentation was, however, sufficient to preserve the
argument made on this appeal.

8 Of course, from the standpoint of hearsay doctrine, an
out of court statement by the plaintiff, when offered by the
defendant, is not hearsay even if offered for the truth of
the matter asserted. Fed. R. Evid. 801(d)(2)(A).

-20-

motion for judgment as a matter of law, was hardly

overwhelming. The testimony proffered by defendants and

erroneously excluded as hearsay is itself not powerful stuff.

It is, however, relevant to the issue of whether defendants

acted with discriminatory animus in discharging the plaintiff.

The testimony was offered in an attempt to rebut the sole

direct evidence of discriminatory animus that Keisling

presented. In a close case, depending on the assessment of

the testimony by the jury, that testimony might be enough to

tip the balance.9 We therefore conclude that a new trial is

warranted.10

9 Keisling argues that the testimony, even if
admissible, was duplicative, because Green herself testified
that she frequently made comments along the lines of "I'm
getting too old for this crap." To the extent, however,
that the testimony of Pedro might have (1) reinforced the
credibility of Green's testimony, which was plainly in her
self-interest, and (2) shown that Keisling herself made
similar comments, the testimony would not have been simply
duplicative.

10 Defendants raise two additional issues on appeal.
First, they argue that the district court erred in excluding
a document entitled "Since Original Warning," which
purported to list 18 deficiencies in Keisling's performance
following the original warning that Keisling received.
Defendants argue that the document is admissible as a
business record kept in the ordinary course of business that
was considered by the SER Board of Directors in making the
decision to terminate Keisling. The district court excluded
the document. It concluded that the document represented
cumulative evidence, because Turner herself testified at
length concerning Keisling's deficiencies and the

-21-

III. CONCLUSION

Having concluded that the trial in this matter was

flawed due to the prejudicial exclusion of relevant testimony,

we vacate the judgment entered by the district court and

remand for a new trial.

presentation that Turner had made to the Board of Directors.
In addition, while the court apparently did not rely on this
point, the court noted that there was evidence that the
document had been prepared after Keisling's termination.
Since we have decided on other grounds that a new trial is
warranted, we are not required to resolve the issue.
Nonetheless, given that the issue is likely to recur in any
new trial, we think it appropriate to note that, on the
record before this court, it appears that the district
court's decision to exclude the document did not represent
an abuse of discretion.
Second, defendants argue that they are
entitled to a new trial because the jury's verdict was
against the weight of the evidence. As we are ordering a
new trial on other grounds, we find it unnecessary to
address this issue.

-22-