USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 95-1920 AIR SAFETY, INC., A/K/A AIR SAFETY ENGINEERING, Plaintiff, Appellant, v. ROMAN CATHOLIC ARCHBISHOP OF BOSTON, A CORPORATION SOLE AND CHRISTIAN BROTHERS INSTITUTE OF MASSACHUSETTS, INC., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Reginald C. Lindsay, U.S. District Judge] ___________________ ____________________ Before Stahl, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Cummings,* Circuit Judge. _____________ ____________________ William M. Simmons with whom Nancy G. O'Donnell was on brief __________________ __________________ for appellant. Francis J. O'Connor with whom Wilson D. Rogers, Jr., was on ___________________ _____________________ brief for appellee Roman Catholic Archbishop of Boston. Regina Williams Tate with whom William J. Egan was on brief ____________________ _______________ for appellee Christian Brothers Institute of Massachusetts, Inc. ____________________ August 21, 1996 ____________________  ____________________ *Of the Seventh Circuit, sitting by designation. COFFIN, Senior Circuit Judge. Appellant Air Safety, Inc. _____________________ filed this diversity suit seeking payments allegedly due for asbestos removal at six Boston area parochial schools. The defendants, the Roman Catholic Archbishop of Boston ("RCAB") and the Christian Brothers Institute of Massachusetts, Inc. ("the Institute"), filed counterclaims alleging damages arising from Air Safety's work.1 The bottom line after a series of rulings by the court and the jury was a net award in favor of each defendant. Air Safety asserts two claims on appeal: (1) the district court abused its discretion in refusing to hold a partial new trial on negligence damages, which Air Safety contends were excessive and unsupported by the record; and (2) the district court erred in excluding crucial exhibits showing Air Safety's overhead costs, requiring a partial new trial on its ___ damages against the RCAB and the Institute. We find no reversible error in the court's evidentiary ruling, but vacate and remand for a new trial on the negligence damages unless defendants accept a proposed remittitur. I. Factual Background __________________ This case originated in Air Safety's successful bid to remove asbestos at six schools owned by the defendants. The work began in the summer of 1988. Conflicts arose over various aspects of the project, including the quality of Air Safety's performance and the defendants' obligations to pay for completed  ____________________ 1 RCAB is the owner of five of the schools. The Institute owns the sixth, Catholic Memorial High School. -2- work. Air Safety filed suit to obtain payment, asserting claims for breach of contract, for payments on an "account stated,"2 and, as alternative relief, for quantum meruit. The RCAB and the Institute filed counterclaims for breach of contract and negligence.3 During the course of pre-trial proceedings, the district court allowed Air Safety's account stated claim in the amount of $328,738 for the five schools owned by the RCAB, but stayed enforcement of the judgment until all other claims were resolved.4 Following a twelve-day trial, the jury found that neither the RCAB nor the Institute had breached their contracts, but that Air Safety had done so. It found, however, that no breach of contract damages had been suffered by either defendant. The jury also determined that Air Safety was responsible for  ____________________ 2 An "account stated" claim is one based on an acknowledgement of an existing liability for a specified amount, from which the law implies a promise to pay. Rizkalla v. ________ Abusamra, 187 N.E. 602, 603 (Mass. 1933). ________ 3 Other causes of action not of significance here were dismissed. 4 Two aspects of the account stated portion of the case need clarification. First, the proceeding affected only the RCAB and its five schools because the Institute had not yet been made a party; Air Safety did not realize at the outset of the litigation that the sixth school, Catholic Memorial High School, was owned by a separate entity. It subsequently filed a First Amended and Supplemental Complaint adding the Institute as a defendant. Second, the account stated award was reduced after trial, based on amounts paid by the RCAB, to $62,249.97. -3- negligence damages, but that it was entitled to quantum meruit relief. The net result was awards in favor of both defendants.5 Air Safety filed a motion for new trial on the negligence damages, claiming that the amounts awarded were not supported by the evidence. After briefing and oral argument, the district court denied the motion in a margin order. This appeal followed. II. Negligence Damages __________________ Air Safety contends that the jury's negligence awards far exceed the record evidence of damage. It maintains that the RCAB established only $21,672 in damages, while the jury awarded $235,000. It further claims that the Institute's proven damages totaled only $85,894, compared with a jury award of $138,000. The district court rejected Air Safety's request through a motion for new trial to revisit the issue of negligence damages, and Air Safety now urges us to find that that ruling was erroneous. Our review is narrow. A district court's denial of a motion for new trial may be reversed only for an abuse of discretion. Ahern v. Scholz, 85 F.3d 774, 780 (1st Cir. 1996). "`In a _____ ______ challenge to a jury award, [the appellate court] is limited to  ____________________ 5 The judgment specified the following amounts, plus interest: (a) quantum meruit from the RCAB to Air Safety: $87,000; (b) quantum meruit from the Institute to Air Safety: $63,100; (c) account stated from the RCAB to Air Safety: $62,249.97; (cont'd) (cont'd from page 3) (c) negligence damages to the RCAB from Air Safety: $235,500; (d) negligence damages to the Institute from Air Safety: $138,100. -4- examining whether evidence in the record supports the verdict. If the jury award has a rational basis in evidence, we must affirm it.'" Nydam v. Lennerton, 948 F.2d 808, 810-11 (1st Cir. _____ _________ 1991) (quoting O'Brien v. Papa Gino's of America, Inc., 780 F.2d _______ ____________________________ 1067, 1076 (1st Cir. 1986)). Under Massachusetts law, uncertainty as to the amount of damages does not bar their recovery, see Stuart v. Town of Brookline, 587 N.E.2d 1384, 1387 ___ ______ _________________ (Mass. 1992), but a plaintiff "`must establish [its] claim upon a solid foundation in fact, and cannot recover when any essential element is left to conjecture, surmise or hypothesis,'" Snelling ________ & Snelling of Massachusetts, Inc. v. Wall, 189 N.E.2d 231, 232 __________________________________ ____ (Mass. 1963) (quoting John Hetherington & Sons, Ltd. v. William _______________________________ _______ Firth Co., 95 N.E. 961, 964 (Mass. 1911)). See also Hendricks & _________ ___ ____ ___________ Assocs., Inc. v. Daewoo Corp., 923 F.2d 209, 217 (1st Cir. 1991); _____________ ____________ Puritan Medical Ctr., Inc. v. Cashman, 596 N.E.2d 1004, 1013 ___________________________ _______ (Mass. 1992). Despite the confines of our inquiry, our examination of the trial transcript requires us to conclude that the negligence awards cannot stand. The evidence in the record fails to substantiate the amounts imposed; even a generous reading of the testimony supports only a small portion of the damages beyond those conceded by Air Safety on appeal. We discuss separately the results of our study with respect to each defendant. The RCAB. Air Safety contends that the record supports only ________ $21,672 in damages for the cost of a temporary boiler at St. Theresa's school. The jury awarded $235,000. Our search -5- revealed three additional items that the jury could have attributed to Air Safety's negligence: extra clean-up work by custodians at St. Theresa's for which Rev. Helmick testified that he "paid a lot;" damage to a clock and bell system; and $7,400 for painting at St. William's school. No amounts for either the custodial time or the clock repair were presented to the jury, although the district court reported in a June 20, 1990 Order on the parties' summary judgment motions that those items were alleged to cost $4,377 and $272.50, respectively. We think it within reason for the jury to choose to compensate the RCAB for these asserted harms, despite the lack of testimony on specific dollar amounts.6 This is not the sort of conjecture barred by Massachusetts law in calculating damages, but simply a matter of imprecision with respect to the amount for a specifically identified harm. The gap challenged by Air Safety, however, is far greater than any reasonable figure attributable to these additional harms. We think an appropriate recovery for them would be the amounts previously identified by the RCAB, totaling $12,049.50. The RCAB points to one additional expense that the jury may have attributed to Air Safety: the $57,971.80 difference between the contract price for Mission High School and the combined  ____________________ 6 The record arguably is ambiguous as to whether Air Safety did the necessary painting at St. William's. On cross- examination, Air Safety's witness, John Murphy, acknowledged that it was his company's responsibility to paint areas damaged by the asbestos removal process, but was unsure whether the work had been done. He testified: "I would have to look back. I thought we painted the floor." -6- amount of Air Safety's account stated claim for Mission and the amount paid to a new contractor to complete the work left unfinished by Air Safety. In other words, the RCAB contends that the record showed that it paid nearly $58,000 more for asbestos removal at Mission High School than the Air Safety contract price. We have two problems with this contention. First, this differential amount between the original contract price and the amount actually expended to get the job done is classically breach of contract damages. The jury, however, awarded no damages for the breach.7 Second, and more significantly, there was no testimony or argument at trial concerning the $58,000. In closing, the RCAB's attorney pointed out (consistent with Rev. Ryan's testimony) that it cost $105,000 to complete the contract work left unfinished by Air Safety; he did not assert, however, that that amount represented higher charges for work Air Safety had contracted to perform for less. Although the original contract amount and Air Safety's account stated claim both were contained in trial exhibits, there was no basis for the jurors to have made the calculation now offered by the RCAB to undergird its award without the crucial $58,000 figure having been explained to them.  ____________________ 7 We recognize that the district court explicitly told the jurors that they may award damages "only once for each harm," and that the jury, for convenience, might have decided to classify all damages under the negligence rubric. -7- We think it likely that the huge discrepancy between the damages actually proven and the amount awarded stems from the jury's effort to compensate the RCAB and the parents and students attending the five affected schools for the trouble caused by Air Safety's negligent work. Beyond the fact that the RCAB has no claim to damages for discomfort suffered by others is the fact that this case involves property damage, not personal injury. See generally Guaranty-First Trust Co. v. Textron, 622 N.E.2d ___ _________ _________________________ _______ 597, 599 (Mass. 1993) (under common law, if injury to property is reasonably curable by repairs, the expense of repairs, if less than diminished market value, is the measure of recovery); Michael B. Bogdanow, Massachusetts Tort Damages 9.03 (1995). ___________________________ It goes without saying that a breach of contract or the negligent performance of a contractual obligation will impose burdens on the wronged party, but compensation is limited to making that party whole.8 Moreover, even if harm in the nature of pain and suffering were compensable in this context, such damages would be rank speculation here. No testimony was presented of specific intangible injuries to the RCAB or its officials as a result of Air Safety's conduct. The general reference in counsel's closing argument to "frustration," "aggravation," and "inconvenience" -- byproducts of any tort or breach of contract -- is far from the  ____________________ 8 Although loss-of-use damages are recoverable, the RCAB made no showing of such losses. -8- "solid foundation in fact," Snelling & Snelling, 189 N.E.2d at ____________________ 232, necessary to support an award of damages.9 We therefore conclude that, unless the RCAB agrees to a remittitur of $201,278.50 -- reducing its negligence damages to $33,721.50 -- Air Safety is entitled to a partial new trial. See ___ Anthony, 17 F.3d at 495 (appellate court has the option of _______ selecting a reduced damages figure or remanding to district court to determine damages).  The Institute. Air Safety acknowledges that the record ______________ supports an award of $85,894 in damages for a number of specific  ____________________ 9 It is worth noting that most of the cases cited by the RCAB and the Institute highlighting the extremely deferential standard for reviewing damage awards involve awards for intangible injuries, a matter "`peculiarly within a jury's ken,'" Velazquez v. Figueroa-Gomez, 996 F.2d 425, 428 (1st Cir. 1993) _________ ______________ (quoting Wagenmann v. Adams, 829 F.2d 196, 215 (1st Cir. 1987)).  _________ _____ See, e.g., Anthony v. G.M.D. Airline Servs., Inc., 17 F.3d 490, ___ ____ _______ ___________________________ 494 (1st Cir. 1994) (remand for remittitur; pain and suffering damages excessive); De Leon Lopez v. Corporacion Insular de _____________ ______________________ Seguros, 931 F.2d 116, 125 (1st Cir. 1991) (damages to _______ grandfather stemming from switch of twins by hospital); Brown v. _____ Freedman Baking Co., 810 F.2d 6, 11 (1st Cir. 1987) (review of ___________________ damages for civil rights violation). In such cases,  [w]e accord broad discretion to the trial court's decision to affirm the jury's award of damages because of [the] court's greater familiarity with local community standards and with the witnesses' demeanor at the trial. Nydam v. Lennerton, 948 F.2d 808, 810 (1st Cir. 1991) (citations _____ _________ omitted) (suit involving, inter alia, police misconduct and false _____ ____ arrest). Although we do not lightly reverse an award for economic loss, the inquiry in such a case is much more closely focused on whether there is adequate evidentiary support for the amount awarded. See Havinga v. Crowley Towing and Transp. Co., ___ _______ ______________________________ 24 F.3d 1480, 1489 (1st Cir. 1994); Redgrave v. Boston Symphony ________ _______________ Orchestra, Inc., 855 F.2d 888, 896 (1st Cir. 1988). _______________ -9- problems at Catholic Memorial High School,10 but contends that no other figures were provided to explain the additional $52,106 awarded by the jury. Our review turned up three additional items for which the jury properly could have awarded compensation: replacing gymnasium light frames, repairing a broken piano leg, and replacing paneling in two rooms. The piano leg and light frames were the subject of testimony by Rev. Sheehan, and the need for repaneling was noted in Exhibit 58, to which the jury's attention was directed.11 One more aspect of the Institute's harm warrants attention. Air Safety concedes responsibility for the $12,770 cost of repairing the gymnasium floor at Catholic Memorial. Kevin Murphy, whose company did the floor repair, testified that the process of sanding removes wood, and the gymnasium floor therefore was, to some degree, in worse condition after the repair than before the damage was done. When asked whether the deficiency would limit the use of the floor in future years, he responded that it would, "considerably down the road." We believe this testimony permitted the jury to award damages for the premature loss of use of the floor.  ____________________ 10 These are: $12,570 for gym floor repairs; $966 for damaged books; $432 for damaged computer cables; $296 for damaged phone wires; $1,630 for re-hanging curtains; $42,000 for wasted salaries, and $28,000 for 14 weeks' lost bingo profits. 11 Although the paneling was not the subject of specific testimony, and, unlike other items, no invoice for it was included in the record, see Exhibit 65, we think it reasonable ___ for the jury to conclude, on the basis of Exhibit 58, that this was damage for which Air Safety was responsible. -10- Unfortunately, no value was placed on either this harm or the three items of damage listed above. Without question, however, the approximately $50,000 questioned by appellant is far in excess of the appropriate amount. The evidence was that a new floor would have cost $50,000 to $60,000; from that knowledge, we are confident that compensation for reducing the old floor's lifespan "considerably down the road" could not reasonably amount to more than several thousand dollars. The other items, all of which appear to be relatively minor, might generously add up to $5,000. Because our task is to view the evidence in the light most favorable to the defendants, see Velazquez, 996 F.2d at 428, we ___ _________ conclude that the record supports a maximum award of $95,000 for all damages to the Institute. Thus, unless the Institute consents to a remittitur of $43,000, Air Safety is entitled to a partial new trial. III. Exclusion of Summaries12 ______________________ Air Safety sought to introduce into evidence a number of summary exhibits in support of its claim for damages or quantum meruit relief. Such exhibits may be admissible under Fed. R. Evid. 1006, which provides: The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary,  ____________________ 12 Defendants' assertion that this issue was not preserved for appeal is untenable. See McLaurin v. Fischer, 768 F.2d 98, ___ ________ _______ 101 (1st Cir. 1985) ("[T]he law is well settled that an appeal from a final judgment draws into question all prior non-final rulings and orders."). -11- or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.  At issue in this case is the requirement in Rule 1006 that the materials underlying a proposed summary exhibit be "made available" to opposing parties. After a two-hour, mid-trial voir dire hearing in which each of Air Safety's proposed exhibits was considered individually, the court excluded most of them because the documents from which the summaries were drawn had not been seen by the defendants and were unavailable at the time of trial.13 Air Safety asserts that the court erred in concluding that the documents were inadmissible under Rule 1006.14 It claims  ____________________ 13 The supporting records at issue were those showing the company's overhead costs, and were located in its home office in Illinois. 14 A portion of Air Safety's argument seems based on an assumption that the district court improperly excluded the summaries because they were not supported by evidence independently established in the record. Although the court at one point indicated that it felt bound by the "already-in- evidence" requirement because of language to that effect in a First Circuit decision, United States v. Nivica, 887 F.2d 1110, _____________ ______ 1125-26 (1989), the court recognized that such an approach conflicted with the language of Rule 1006 giving the court discretion to order production in court of the documents __________ underlying a summary. In any event, its decision ultimately was based on a determination that the underlying documents had not been "made available" to the defendants, and it therefore did not need to rule on whether a summary based on records that were ____ available nonetheless must be excluded because they were unsupported in the record. We note, for the sake of clarity, that Air Safety is correct that the evidence underlying Rule 1006 summaries need not be admitted into evidence. See, e.g., United States v. Bakker, 925 ___ ____ _____________ ______ F.2d 728, 736-37 (4th Cir. 1991); 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence, 1006[02], 1006-9 (1995); ____________________ Michael H. Graham, Federal Practice and Procedure 7031, at 959 ______________________________ -12- that it gave defendants copies of the challenged exhibits in November 1992, and that they never asked during the year and a half before trial to see the underlying material. Moreover, defense counsel had signed two pretrial memoranda without noting any problems with Air Safety's proposed exhibits. Air Safety points out that the documents at issue easily could have been brought to Boston for defendants' review had there been any indication before the start of trial that defendants wanted to see them. Thus, Air Safety contends that the records were "made available" within the meaning of Rule 1006, and, to the extent that they were inaccessible at trial, the defendants were to blame. In Air Safety's view, defendants' trial objections constituted an ambush and should have been dismissed as untimely. We cannot agree. Although it appears that Air Safety left the overhead records in Illinois in the reasonable belief that no one was interested in them, the record indicates that the company fell short of meeting its responsibility under Rule 1006. Air  ____________________ (1992). Indeed, such an interpretation of the rule would negate its explicit grant of discretion to the trial judge to order the __________ underlying documents produced in court. Although in Nivica and a subsequent case relying on it, ______ United States v. Sawyer, 85 F.3d 713, 740 (1st Cir. 1996), we _____________ ______ stated that Rule 1006 summaries must be based upon "evidence independently established in the record," the language in both cases was dictum because the relevant evidence there had been admitted. The requirement of prior admission actually applies to a different sort of summary: one used as a jury aid to summarize complex or voluminous information already in the record. See, ___ e.g., Bakker, 925 F.2d at 736-37; Weinstein's Evidence, at  ____ ______ ____________________ 1006[07], 1006-21. In such cases, the summary is not itself evidence, Bakker, 925 F.2d at 736; Weinstein's Evidence, at  ______ ____________________ 1006[07], 1006-21-23, and the court's concern is to ensure that the jury is not misled or confused by selective emphasis, Weinstein's Evidence, at 1006[07], 1006-21-22.  ____________________ -13- Safety apparently submitted only a skeletal version of its summary exhibits in November 1992, perhaps without designating them as summaries,15 and first provided a comprehensive version in June 1994. In the interim, all parties had signed pretrial memoranda that Air Safety took as a sign that defendants saw no problems with its exhibits. Defendants, however, intended no such acquiesence and, once the nature of the damages exhibits was clear to them, sought to examine the underlying documents. In concluding that Air Safety had failed to lay a proper foundation for the summaries, the district court did not dispute that the company willingly would have provided the underlying documents -- if requested -- at any time during the lengthy pretrial period. The court ruled, however, that such passive availability did not meet Air Safety's obligation. Near the conclusion of the voir dire hearing, it summarized its ruling:  I don't think that it is enough to say that the documents have been available or could have been available or were available when they were not identified as the source for these summaries. What is important in the discovery context is one thing, but once the discovery comes down to trial and somebody prepares a summary, it seems to me that the person providing the summary must say now these documents, this summary is a summary of the following documents and here they are.  ____________________ 15 Defendants claim that the exhibits provided in 1992, described by Air Safety's counsel as "prototypes," contained little information. Indeed, the Institute's counsel described them during the voir dire hearing as "blanks" that bore headings, but no numbers and few subheadings. Those preliminary documents apparently are not in the appellate record. The Institute's counsel additionally asserts that the challenged exhibits were identified as "summaries" for the first time at the final pretrial conference on June 30; the next day, she sent a letter requesting the underlying documents. -14- We think this is a correct and sensible construction of Rule 1006's "made available" requirement. As the court recognized, Rule 1006 operates independently of the discovery rules, see ___ Weinstein's Evidence 1006[04], at 1006-16, and the failure to _____________________ request or obtain the documents during discovery does not negate a party's "absolute right to subsequent production of material under Rule 1006, should that material become incorporated in a chart, summary, or calculation." Id.; see also Square Liner 360 ___ ___ ____ ________________ Degrees, Inc. v. Chisum, 691 F.2d 362, 376 (8th Cir. 1982). ______________ ______ Common sense dictates that this guaranteed access, designed to give the opponent the ability to check the summary's accuracy and prepare for cross-examination, see, e.g., Chisum, 691 F.2d at ___ ____ ______ 376-77; United States v. Smyth, 556 F.2d 1179, 1183 (5th Cir. _____________ _____ 1977); Weinstein's Evidence 1006[04], at 1006-15, must include ____________________ unequivocal notice of the other party's intent to invoke Rule 1006. It seemingly was the lack of such notice that gave rise to the misunderstanding and confusion here.  Thus, to satisfy the "made available" requirement, a party seeking to use a summary under Rule 1006 must identify its exhibit as such, provide a list or description of the documents supporting the exhibit, and state when and where they may be reviewed.16 Here, Air Safety merely assumed that the defendants were uninterested in reviewing the overhead records that it believed were the obvious -- though not explicitly identified --  ____________________ 16 This assumes, of course, that the "when" and "where" are reasonably convenient for the opposing party. -15- source for its proposed damage summaries. In these circumstances, the district court committed no reversible error in concluding that Air Safety had not satisfied the "made available" foundation requirement for admitting the exhibits. Moreover, we doubt that the exclusion of this material significantly prejudiced Air Safety. The district court allowed Air Safety to use the exhibits as chalks, and they were relied on heavily during the testimony of its damages expert. The expert, Dennis Staats, testified to the specific amounts contained in the summaries while the jury was able to peruse the chalks. Although the district court repeatedly reminded the jury that the testimony -- not the summaries -- was the evidence, we think the jury was more likely to have understood this as a caution about the technicalities of litigation than as a suggestion that the calculations in the chalks were untrustworthy. The numbers, after all, also were contained in the testimony. To be sure, exclusion of the summaries from the jury room required greater reliance on memory. Air Safety, however, makes no specific argument -- even a speculative one -- showing how the quantum meruit figures might have been more accurate had the jurors had access to the excluded exhibits during deliberations. We therefore affirm the court's judgment with respect to the quantum meruit award. IV. Conclusion __________ The district court's judgment on negligence damages against Air Safety is vacated, and the case is remanded for a new trial -16- on that issue unless defendants agree to remittiturs of $201,278.50 for the RCAB and $43,000 for the Institute. Having found no error in the court's exclusion of Air Safety's proposed damages summary exhibits, we affirm the quantum meruit award for Air Safety as determined by the jury. Affirmed in part, vacated and remanded in part. Each party ________________________________________________ __________ to bear its own costs. ______________________ -17-