## 19318

The STATE, Respondent, v. Robert BARRS and George K. Timmons, Appellants.

(184 S. E. (2d) 708)

*Messrs. Edward K. Pritchard, Jr.* of *Pritchard, Myers, Morrison & Bloom,* Charleston, and *Reese I. Joye, Jr.* of *Waldman & Joye,* Charleston Heights, *for Appellants,* cite:

*Messrs. Robert B. Wallace, Solicitor* and *A. Arthur Ros-enblum, Assistant Solicitor,* of Charleston *for the Respondent,* cite:

November 11, 1971.

BRAILSFORD, Justice:

Robert Barrs, George Timmons and Charles James were arrested at a roadblock in a rural section of Charleston County on March 16, 1969, and charged with the theft of copper wire from a nearby toll line of Southern Bell Telephone Company. Barrs and Timmons were put to their trial in the County Court for Charleston County, convicted and sentenced to prison terms. They appeal on numerous exceptions which they argue under six questions. We consider all of them, but not in the order in which they are briefed.

A substantial part of the brief is devoted to the claim that the arrest of the trio was illegal; hence, the incident search of their persons and the removal of a pair of wire cutters from Timmons' hip pocket violated their constitutional rights against unreasonable searches and seizures. This requires a statement of the circumstances which led to the arrest.

For several days prior to March 16, 1969, and on that day, Southern Bell's electronic warning system linked to its unused Charleston-Savannah toll line registered a series of alarms. Investigations revealed that large quantities of wire had been cut and removed from the line at a number of points near Hollywood.

On Sunday morning, March 16, a lineman engaged in repairing the alarm system saw a station wagon stop on a dirt road about one hundred yards from his position. Three men, one of whom was heavily bearded, emerged from the vehicle, entered the woods and began shooting firearms. These three men were the only persons seen by the linemen in this sparsely settled vicinity that morning.

At about 2:00 on that afternoon a strategy meeting was held by telephone employees and police officers, after which a number of these persons converged on the area. At about 3:00 a telephone security agent, while traveling on a dirt road (referred to as the Dixie Plantation Road) parallel to the toll line and less than one hundred yards from it, saw two men run across the road, followed closely by a third. He observed that they were young white men, dressed in work clothes, and one of them had a full beard. These men ran through the woods and on into a swampy area. On following a trail toward the line from whence the men had come, the agent found a 1957 Chevrolet station wagon parked under the line. An aluminum extension ladder was seen at the base of a pole. The spans of copper wire had been removed from nearby poles. Coils of identical wire were found in the station wagon and others on the ground

near it. The agent made a report by radio of what he had observed. A search of the area for the three men was commenced by police officers and security agents. Bloodhounds were sent for and roadblocks were set up, including one on the Dixie Plantation Road opposite the point at which the station wagon was found. It is clearly inferable from the record that the officers conducting the manhunt, including those manning the roadblock, were advised of the description of the three suspects. Of about ten cars which passed prior to the arrest of appellants, only one was stopped for investigation.

Sometime after the roadblock was set up, the same telephone lineman, who had observed the station wagon and three men that morning, came to the scene in response to a call. He related the morning incident to the officers and identified the station wagon as being the same vehicle he had seen earlier.

At about 5:30 P.M., a 1939 Ford with an elderly driver and three young white men as passengers approached the roadblock. As it did so, the security agent exclaimed, "There's the man with the beard." The car was stopped and its occupants ordered out. A number of officers were present and others from nearby came up almost immediately. Sgt. Grassie of the Charleston County Police was one of the latter. When he arrived, the suspects, who all had prior records and were known to him and to other officers present, were standing in the road surrounded by police officers. His appraisal of the situation was that they were already in custody. He determined to take them to headquarters in a police cruiser driven by Detective Botchie. Preparatory to doing so, he told the men that they were under arrest for larceny of wire and for illegal weapons (two pistols had been found hidden under the seats of the old Ford), and Detective Botchie searched them for weapons. He removed a pair of wire cutting pliers from Timmons' hip pocket, and these were admitted into evidence at the trial over the search and seizure objection.

Whether the arrest and incident search were constitutionally valid depends upon "whether, at the moment the arrest was made, the officers had a probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (appellants) had committed * * * an offense." *Beck v. Ohio,* 379 U. S. 89, 91, 85 S. Ct. 223, 225, 13 L. Ed. (2d) 142; *State v. Hamilton,* 251 S. C. 1, 4, 159 S. E. (2d) 607, 609 (1968). This question was answered in the affirmative by the trial judge. We think it apparent from the foregoing that there was abundant evidence to support this finding. Since we have no jurisdiction to weigh the evidence, Art V, Sec. 4, Constitution of South Carolina, it is conclusive on appeal. Appellants, citing *Terry v. Ohio,* 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. (2d) 889 (1968), claim that since the officer who made the arrest was not identified and did not articulate the facts on which he relied, the showing was insufficient. We do not construe the cited case to hold that testimony establishing probable cause must come from the mouth of the arresting officer. Here, a number of officers acted in concert, and none could say at what moment in time or by whom the appellants were arrested, if, indeed, they were arrested prior to the arrival of Sgt. Grassie.

The claimed failure by the State to produce the arresting officer is also made the basis of appellants' further claim that they were denied the right to be confronted by the witnesses against them. We find no merit here.

We next consider appellants' claim that the court erred in admitting into evidence testimony concerning admissions made by them to Sgt. Grassie while in custody. They contend that the admission of this testimony violated their privilege against self-incrimination because the State failed to prove that the procedural safeguards required by *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct.

1602, 16 L. Ed. (2d) 694 (1966), were observed or that they voluntarily, knowingly and intelligently waived the privilege. Again, the finding of the trial judge that the *Miranda* warnings were given, and that the appellants made the statements to which Sgt. Grassie testified freely and voluntarily and with knowledge of their right to remain silent, is supported by evidence. It was his duty to judge the credibility of the witnesses and resolve the issue accordingly. He has done so, and we have no authority to interfere with his finding.

The Appellants charge that the court erred in admitting in evidence a coil of .104 hard drawn copper wire with rolled sleeves. This exhibit was not identified as part of the stolen wire. However, it was identified as being of the same type as the wire used by Southern Bell on its Charleston-Savannah toll line, and as that found in the station wagon abandoned by appellants on March 16. The testimony further indicated that Southern Bell is the only user in South Carolina of wire with characteristics matching the exhibit. There was abundant proof of the *corpus delicti,* and the exhibit was not offered to aid in proof of the fact of larceny. It was simply demonstrative evidence, useful in the examination of witnesses during this somewhat tedious trial. We find no error, certainly none prejudicial to appellants.

Appellants also complain upon the ground of irrelevancy of the admission in evidence of two pistols which were found in the old Ford at the roadblock and were shown to have been in their possession. The pistols were relevant for their tendency, in the light of the telephone lineman's testimony that he had heard shots fired by the occupants of the station wagon, to connect appellants with it. The further claim that the weapons should have been excluded because prejudice to the appellants far outweighed any relevance to the State's case is without merit. Long before this objection to the introduction of these weapons was made, it had been proved that they were in ap-

pellants' possession on the day in question, and they had been marked for identification and several times exhibited to the jury. Since the jury was already fully informed that appellants were armed with pistols, the admission of the exhibits over objection could not have prejudiced them.

Nor do we find any merit in appellants' final claim that the court erred "by allowing the State to re-examine Detective Botchie on the issue of probable cause notwithstanding the fact that the issue had not been raised on cross-examination." The ruling was a discretionary one, and we find no reason for concluding that the court abused its discretion.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.