530 S.E.2d 385

**Regina K. DAVIS, Respondent,**

**v.**

**Amanda TRAYLOR, Appellant.**

**No. 3139.**

Court of Appeals of South Carolina.

Submitted Feb. 8, 2000.

Filed March 27, 2000.

Refiled April 13, 2000.

Robert J. Thomas, of Rogers, Townsend & Thomas, of Columbia, for appellant.

Frank A. Barton, of West Columbia; and J. Marvin Mullis, Jr., of Columbia, for respondent.

## ORDER WITHDRAWING AND SUBSTITUTING OPINION

PER CURIAM:

This Court originally heard this case and issued an opinion affirming a jury verdict for Respondent. *See Davis v. Traylor,* Op. No. 3139, 2000 WL 313302 (S.C.Ct.App. filed March 27, 2000) (Shearouse Adv. Sh. No. 12 at 7). After the panel submitted the opinion to the Clerk of Court for filing, the Supreme Court issued *Clark v. Cantrell,* 339 S.C. 369, 529 S.E.2d 528 (2000), *aff'g as modified* 332 S.C. 433, 504 S.E.2d 605 (Ct.App.1998). The Court withdraws the original opinion and substitutes the attached opinion.

MOREHEAD, Acting Judge:

In this negligence case, Amanda Traylor appeals from a jury verdict for Regina Davis finding Traylor's negligence proximately caused serious injury to Davis. Traylor contends the trial court erred in denying her motion for a directed verdict, admitting a redacted statement, and permitting the use of a rifle for demonstrative purposes. We disagree and affirm.

On August 4, 1992, Amanda Traylor drove to a mall parking lot where teenagers often gathered. She was looking for her boyfriend, Brian Hammond. She found Hammond, who was highly intoxicated, and told him Art Garrett "wanted to jump on him." When Hammond approached Garrett and asked him "what the problem was," the two began fighting. Mall security eventually broke up the fight. Traylor witnessed the fight and overheard that Garrett intended to resume fighting at the Port Station.

Traylor later drove Hammond to his house and waited while he went inside. When Hammond emerged, he asked Traylor to drive him to the Port Station. Shortly before reaching the Port Station, Hammond asked Traylor to let him out at the Courtyard, a hotel on a hill overlooking the Port Station.

According to Traylor, before she let Hammond out of her car, he expressed his intention of killing a "n-----." Traylor testified she understood this to refer to Garrett but did not take it seriously until Hammond stepped out of the car and Traylor saw he had a rifle.

Traylor left Hammond and went home to get her parents. They returned to the Courtyard and searched for Hammond. As they searched, they heard a shot. Hammond shot one bullet, which penetrated Garrett's throat, exited, and struck Regina Davis in the chest. Davis was seriously injured.

In her civil suit Davis contended Traylor was negligent in transporting Hammond, who was armed and highly intoxicated, to the Port Station. Davis also asserted Traylor was negligent in failing to contact police and failing to warn third parties. A Richland County jury agreed and returned a verdict in favor of Davis. Traylor appeals.

## I.

■ Traylor first argues the trial court erred in refusing her motion for a directed verdict. Traylor specifically contends there was no evidence she could have foreseen Hammond planned to kill or attempt to kill Garrett.[1] We disagree.

■ When considering a motion for a directed verdict, the trial court must view the evidence in the light most favorable to the party opposing the motion. *Fleming v. Borden, Inc.,* 316 S.C. 452, 457, 450 S.E.2d 589, 592 (1994). If more than one reasonable inference can be drawn from the evidence, the trial court should deny the motion and submit the case to a jury. *Id.*

The evidence presented at trial showed Hammond was wearing only a pair of shorts and tennis shoes when he left his house with the rifle. Hammond testified he was holding the rifle in his left hand when he got into the back seat of Traylor's two-door Honda Prelude. Hammond attempted to demonstrate at trial exactly how he hid the rifle from Traylor's view as he entered the car.

While both Traylor and Hammond conceded Hammond was extremely intoxicated, Traylor maintained she did not notice Hammond had a rifle with him as he climbed into the back of her Prelude. Traylor testified that, although Hammond said he planned to kill a "n-----." prior to getting out of her car, Traylor did not believe him. She further testified that, although she did not notice Hammond had a rifle when he got into her car, she saw the rifle when he was getting out of her car. According to Traylor, she did not believe Hammond intended to shoot Garrett until she saw the rifle.

When we view the evidence in the light most favorable to Davis, we believe Davis presented sufficient evidence Traylor knew Hammond planned to kill Garrett before Hammond got out of the car. Considering the size of the rifle, the lack of clothes in which to conceal the rifle, the close quarters of the car, Hammond's intoxicated state, and the close relationship between Hammond and Traylor, it could be inferred that a reasonable person would know Hammond had a rifle with him

---

1. While Traylor asserted in her answer she had no duty under the facts of this case, she neglected to argue that defense at trial or on appeal.

when he got into the car. We, therefore, hold the trial court properly submitted the question of foreseeability to the jury.

## II.

Traylor next argues the trial court erred in admitting the statement she made to police regarding the shooting. Traylor contends admission of the statement injected race into the trial. We disagree.

Evidence is relevant if it tends to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. Relevant evidence may be excluded if the prejudicial effect of its admission substantially outweighs the probative value of the evidence. Rule 403, SCRE. The trial court, however, has wide discretion in determining the relevancy of evidence, and its decision to admit or reject evidence will not be reversed on appeal absent an abuse of that discretion. *Hoeffner v. The Citadel*, 311 S.C. 361, 429 S.E.2d 190 (1993).

Prior to trial, Traylor notified the trial court "there are some racial issues that could creep into the case." After the jury was drawn, Traylor again raised the issue and suggested no one should mention the races of the people involved in this incident. Davis announced her intent to introduce Traylor's written statement in which she acknowledged she heard Hammond say he was "going to kill [himself] a n-----." The trial court ruled the statement was relevant but redacted the statement to reduce the racial epithet to an "n." When Davis questioned Traylor about the statement at trial, Traylor testified she understood the statement to refer to Garrett.

The trial court properly admitted Traylor's statement, including Hammond's use of the racial epithet. The statement was relevant to demonstrate Hammond intended to kill Garrett and Traylor was on notice of Hammond's intent. The trial court was not required to exclude relevant evidence merely because it was unpleasant or offensive. *See State v. Cason*, 317 S.C. 430, 454 S.E.2d 888 (1995) (while defendant's statement he killed a "f---ing n----- bitch" was offensive, it did not inextricably inject race into the trial); *cf. United States v.*

*Dunnaway*, 88 F.3d 617 (8th Cir.1996) (evidence relating to the defendant's common use of racial epithets was admissible to show discriminatory purpose and intent which was an element of the charge against him); *Zebroski v. State*, 715 A.2d 75 (Del.1998) (introduction of a racial epithet was proper where it was probative of the defendant's intent and state of mind at the time of the shooting); *Duonnolo v. State*, 397 A.2d 126 (Del.1978) (defendant's remark he was going to "kill him a n-----" was relevant and properly admitted although it was inflammatory).

■ Moreover, Traylor suffered little, if any, prejudice from the admission of the statement. The trial court redacted the statement to limit its inflammatory and prejudicial nature. The epithet was attributed to Hammond rather than Traylor. We find no error in the admission of the statement.

### III.

■ Traylor finally argues the trial court erred in permitting Davis to use a rifle similar to the one used by Hammond for demonstrative purposes. At trial, Davis produced a rifle similar to the one used by Hammond for the purpose of showing Hammond could not have concealed the rifle from Traylor. The trial court refused to admit the rifle into evidence but allowed Davis to use it for demonstrative purposes only. After Hammond acknowledged the rifle was similar in size and appearance to the one he used on the night of the shooting, Davis asked Hammond to demonstrate how he entered the car with the rifle that night. Traylor contends the exhibition of the rifle was "unduly prejudicial and inflammatory."[2] We disagree.

■ We have found no South Carolina case in which the trial court refused to admit an object into evidence but allowed the use of the object for demonstrative purposes during trial. We believe the standard for merely showing or exhibiting

---

**2.** Traylor also argues on appeal that Davis failed to lay proper foundation for the use of the rifle. Because Traylor did not argue this ground to the trial court, however, this issue is not preserved for appeal. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 497 S.E.2d 731 (1998) (issue must have been raised to and ruled upon by the trial court to be preserved for appeal).

demonstrative evidence, however, would not be higher than the standard for actually admitting demonstrative evidence. The trial court has broad discretion in the admission or rejection of evidence and will not be overturned unless it abuses that discretion. *See Clark v. Cantrell*, 339 S.C. 369, 529 S.E.2d 528 (2000), *aff'g as modified* 332 S.C. 433, 504 S.E.2d 605 (Ct.App.1998) (trial court has broad discretion in whether to admit a computer animation as demonstrative evidence); *Holmes v. Black River Elec. Coop.*, 274 S.C. 252, 262 S.E.2d 875 (1980) (pictures of plaintiff's amputated arm were demonstrative evidence that aided the jury in evaluating the injury suffered and, as such, were admissible within the discretion of the trial court); *State v. Barrs*, 257 S.C. 193, 199, 184 S.E.2d 708, 711 (1971) (no error in admitting copper wire coils of the same type as those allegedly stolen by the defendant because the coils were "simply demonstrative evidence, useful in the examination of witnesses").

Other states also have addressed the mere use of evidence for demonstrative purposes under an abuse of discretion standard. In *Barber v. Commonwealth*, 206 Va. 241, 142 S.E.2d 484 (1965), the defendant claimed he shot his wife while they were wrestling with the gun she aimed at him. *Id.* at 488. During the prosecution's cross-examination of the defendant, the prosecution used a toy gun to show the gunshot injuries could not have occurred the way the defendant claimed. *Id.* at 492. The defendant argued on appeal the trial court erred in allowing the prosecution to use a toy pistol for demonstrative purposes. *Id.* The appellate court, however, found there was no abuse of discretion. *Id.* at 493.

In *State v. Reaves*, 132 N.C.App. 615, 513 S.E.2d 562 (1999), the defendant asserted in his opening argument that the prosecution could not present evidence of shell casings from the revolver allegedly used by the defendant during the shooting. *Id.* at 564. During the trial, the prosecution used two firearms, similar to those used during the shooting, to demonstrate the difference between a revolver and a semi-automatic weapon, i.e., a revolver retains its shell casings while a semi-automatic ejects its shell casings. *Id.* Although the guns were never introduced into evidence, the defendant asserted he was improperly prejudiced by the use of the weapons at trial. *Id.* The appellate court addressed the use of

the guns as if the guns were admitted into evidence and held there was no abuse of discretion in allowing the prosecution to use the guns for demonstrative purposes. *Id.* at 564–565.

In this case, the demonstration was relevant to whether Traylor knew or should have known Hammond had a rifle. The size of the bolt-action rifle with a scope and strap aided the jury in determining whether Hammond could have successfully concealed the rifle from Traylor as he entered her compact car. We, therefore, conclude the trial court did not abuse its discretion in allowing Davis to exhibit this rifle to the jury.

**AFFIRMED.**

HEARN, C.J., and STILWELL, J., concur.