609 S.E.2d 838

John C. CONWAY, Jr., Appellant,

v.

CHARLESTON LINCOLN MERCURY INC. and
Haywood B. Hyman, Sr., Respondents.

No. 3946.

Court of Appeals of South Carolina.

Heard Dec. 8, 2004.

Decided Feb. 14, 2005.

Rehearing Denied May 19, 2005.

302

George Hunter McMaster and Nelda T. Smyrl, both of Columbia, for Appellant.

G. Dana Sinkler, of Charleston, for Respondents.

STILWELL, J.:

John Conway sued Charleston Lincoln Mercury (CLM) and Haywood Hyman, its sole shareholder and president, alleging breach of contract, unpaid wages, fraud, and constructive fraud arising from an alleged oral agreement between Hyman and Conway to pay Conway a severance allowance. After a bench trial, the trial court issued an order finding for CLM and Hyman on all claims. We affirm.

## BACKGROUND

CLM initially hired Conway as an independent contractor when Hyman was negotiating to sell the company. After one negotiation fell through, Conway and another employee, Al Shuman, discussed purchasing CLM. However, on a trip to Hyman's home in Richmond, Virginia, Hyman informed Conway he did not intend to sell the company to Conway and Shuman and was in talks with another party. Conway alleges Hyman asked him to work to get the company ready for sale and to keep Shuman from leaving the company. Conway contends Hyman promised him $120,000 in severance in exchange for his efforts should he not be offered employment comparable to his then employment following a sale. Conway testified he prepared a memorandum memorializing the agreement he made with Hyman. Conway asserts he presented a copy of this memorandum to Hyman, but Hyman did not sign it. Later, Conway drafted another memorandum, entitled "Memorandum to File," setting forth his version of the events surrounding the agreement and reciting the terms of the

agreement as presented to Hyman. Conway placed a copy of this memorandum in his personnel file where a CLM accounts payable clerk found it approximately a year later.

Eventually, another buyer was identified and a contract was executed for the sale of CLM's assets. After the sale closed, Conway continued his employment with the dealership for a short time as an independent contractor, but never became a full-time employee of the new owner.

Conway then filed this action, alleging CLM and Hyman failed to pay him the $120,000 severance as promised in the oral agreement. Following a non-jury trial, the court ruled in favor of CLM and Hyman on all of Conway's claims. Among other things, the trial court ruled no valid contract between the parties for severance ever existed because the written agreement was never executed as Conway anticipated. The court also denied Conway's post-trial motions.

## DISCUSSION

### I. Existence of an Oral Contract

■ Conway contends the trial court erred in not finding an oral contract existed between he and CLM. We disagree.

■ An action for breach of contract seeking damages is an action at law. *Sterling Dev. Co. v. Collins,* 309 S.C. 237, 240, 421 S.E.2d 402, 404 (1992). In an action at law tried without a jury, the trial courts factual findings will not be disturbed on appeal unless those findings are wholly unsupported by the evidence or controlled by error of law. *Gordon v. Colonial Ins. Co. of California,* 342 S.C. 152, 155, 536 S.E.2d 376, 378 (Ct.App.2000).

■ Because Conway alleges he and Hyman formed the contract in Virginia, Virginia law must be applied to determine whether a valid contract was formed. *Unisun Ins. Co. v. Hertz Rental Corp.,* 312 S.C. 549, 551–52, 436 S.E.2d 182, 184 (Ct.App.1993) ("Unless the parties agree to a different rule, the validity and interpretation of a contract is ordinarily to be determined by the law of the state in which the contract was made."). Under Virginia law, a writing is not always necessary to form a valid contract. *Harris v. Citizens Bank & Trust Co.,* 172 Va. 111, 200 S.E. 652, 665 (1939). However,

"[i]f it be understood that its terms are to be reduced to writing as an ultimate expression of conclusions reached . . . then a writing is necessary." *Id.* at 665.

The trial court's conclusion that no valid agreement existed is supported by the evidence. The record indicates the parties meant for the agreement to be reduced to writing as a prerequisite to the formation of a contract. Conway testified that after his conversation with Hyman regarding the payment of severance, Conway reduced the terms of that agreement to writing and gave Hyman a copy the next morning. Conway admitted Hyman told him he was not feeling well and could not read it at that time.

Conway's memo to file also contains evidence of the parties' intentions. The memo's subject line states: "Employment Agreements & Severance Pay." Conway testified he created the document after his trip to Richmond and it "memorialized the agreement Mr. Hyman and I came to [during his trip]." The memo states:

> Mr. Conway presented Mr. Hyman a new *written* Employment Agreement for himself as well as a Memorandum outlining the Estate and Business Planning that had been discussed previously with Mr. Douglas. Mr. Hyman started to look the documents over and then said that he wasn't feeling well and that he couldn't go through them right then because he wasn't feeling well and was tired. He said he would look them over later and get back to Mr. Conway, since he (Mr. Conway) was preparing to leave to return to Charleston.

(Emphasis added.) The memorandum then recites the "text of the written text of the Employment Agreement." The terms of this Employment Agreement included Conway's right to receive a $120,000 severance at the closing of the sale of CLM if CLM were unable to offer him continued employment.

Additionally, Conway's wife, Carol Conway, testified she was present when the alleged oral agreement was formed. She confirmed Conway produced a written memo the next day that included the points he and Hyman discussed. She stated Conway gave a copy of the memo along with other documents to Hyman in her presence and said Mr. Hyman remarked "he didn't feel well. That he didn't want to read over anything

like that because he was feeling bad and I assume that he really was and that he would sign it, just to leave the papers and he would sign them and send them to John. And that was it."

The trial court could infer from this evidence that the parties presumed their oral negotiations were to be reduced to writing before a contract was formed. Additionally, according to the memo Conway placed in the file, the terms of the agreement were in fact reduced to writing in the form of an employment agreement. Therefore, Conway's testimony, his wife's testimony, and the file memo contemplating a written agreement, sufficiently support the trial court's finding that the parties intended for the agreement to be reduced to writing. Because the trial court found the prerequisite of a written agreement was not satisfied, it properly determined a valid agreement did not exist.[1]

## II. Hyman's Deposition

As part of his argument that an oral agreement existed, Conway contends the trial court erred in allowing the defense to admit Hyman's deposition in lieu of testimony. The trial court allowed the deposition after the defense submitted a physician's letter documenting Hyman's Alzheimer's disease and significant deterioration of his memory. Conway complains the deposition was the sole evidence in support of the position of CLM and Hyman that no valid agreement existed and should not have been admitted. We disagree.

The decision to admit or exclude evidence is within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion. *Gamble v. Int'l Paper Realty Corp. of South Carolina,* 323 S.C. 367, 373, 474 S.E.2d 438, 441 (1996). To warrant a reversal based on the admission of evidence, the appellant must show both error and resulting prejudice. *Commerce Ctr. of Greenville, Inc. v. W. Powers McElveen Assocs. Inc.,* 347 S.C. 545, 559, 556 S.E.2d 718, 726 (Ct.App.2001). When improperly admitted evidence is merely cumulative, no prejudice exists, and therefore, the admission is

1. Because we affirm the trial court on this issue, we need not address Conway's argument that the trial court erred in concluding severance pay is not wages under S.C.Code Ann. section 41–10–80 (Supp.2004).

not reversible error. *Creech v. South Carolina Wildlife Marine Res. Dept.,* 328 S.C. 24, 35, 491 S.E.2d 571, 576 (1997).

Regardless of whether the trial court properly admitted Hyman's deposition, Conway did not suffer prejudice from its admission. This evidence was merely cumulative to the evidence discussed above. Conway's own testimony, his wife's testimony, and the Memorandum to File support the court's finding that no valid agreement existed. In addition, when the court ruled the deposition admissible, it specifically informed the parties they were free to call Hyman as a witness. Conway chose to forgo this opportunity. Therefore, we find no basis for reversal.

### III. Alleged Discovery Abuses

After trial, Conway moved for relief from judgment on several grounds under Rule 60, SCRCP, including newly discovered evidence. At the hearing on the motion, Conway asked for a new trial and argued Hyman and CLM had engaged in a pattern of discovery abuses. The trial court denied Conway's motion. Conway argues the court's ruling as to discovery abuses was error. We disagree.

■ Discovery rights afford a trial attorney the opportunity to prepare for trial. *Samples v. Mitchell,* 329 S.C. 105, 113–14, 495 S.E.2d 213, 217 (Ct.App.1997). Where these rights are not accorded, prejudice is presumed and unless the party that failed to comply establishes a lack of prejudice, reversal is required. *Id.* at 114, 495 S.E.2d at 217.

Conway asserts three instances of discovery abuse by CLM and Hyman. They neither individually nor collectively support his request for a new trial.

■ First, he contends the defendants should have apprised him of Hyman's medical condition or provided him with a copy of his doctor's letter prior to trial. Assuming this information should have been revealed to Conway pretrial, we are unable to discern how advance warning of Hyman's condition would have aided Conway or made any difference in the case. There is no indication that advance knowledge of Hyman's ailment would have assisted Conway in doing anything more than he did.

█ Next, Conway points to a document the defense offered though an expert witness that had never been provided to Conway during discovery. Although the document was initially admitted, the trial court later struck it pursuant to Conway's motion to strike. Because the document was stricken from the record and there is no indication that it was relied on by the trial court in its decision, we find no prejudice.

█ Conway's final assertion of discovery abuse concerns the defense's failure to provide him with notes and a memo written by James Starnes, a consultant Hyman hired to investigate CLM's outstanding liabilities. Conway alleges an excerpt from Starnes' handwritten notes shows three attorneys who represented the defendants, including one who also served as a fact witness in the case, all believed Conway was entitled to severance. CLM and Hyman had listed Starnes as a fact witness several months before trial, but later decided not to call him. After learning he would not be called, Conway cancelled his scheduled deposition of Starnes.

After trial, as a result of a case Al Shuman brought against CLM, Conway discovered Starnes' documents. The passage in question is from Starnes' handwritten notes and reads:

J.C.

Ry [Marchant] thinks Al's entitled to the severance
Zuckerman    "    "    "    "    "    "
Thompson    "    "    "    "    "    "

Conway argues the note suggests three of Hyman and CLM's attorneys (Marchant, Zuckerman, and Thompson) believed Conway was entitled to a severance and the defense made a deliberate decision to withhold this information. First, we note the passage originally said "Al's entitled to severance" and it is not clear who struck Al and inserted J.C. or when this took place. Furthermore, the passage comes from a portion of the notes Starnes labeled "Conversation w/J. Conway." A thorough review of the notes and a comparison of them to the memo Starnes prepared based on the notes clearly indicate the source of the statements was Conway himself, rather than the three attorneys referenced. This deduction is supported by affidavits of Starnes and Marchant.

In his affidavit, Marchant denied ever telling Starnes or anyone else that he believed Conway was entitled to severance pay. Starnes, in his affidavit, stated the disputed passage refers to statements Conway made to him and not to comments made by Marchant, Zuckerman, or Thompson. He further stated none of the three attorneys ever told him they believed Conway was entitled to the severance. Conway was not prejudiced by the defense's failure to produce Starnes' documents containing Conway's own self-serving statements.

Through their argument and the record, Hyman and CLM have established Conway was not prejudiced by any of the discovery abuses he alleges occurred. The trial court properly denied Conway's motion for a new trial.

**AFFIRMED.**

ANDERSON and SHORT, JJ., concur.