742 S.E.2d 49

Jenean Trammell GIBSON, as Personal Representative for the Estate of James E. Gibson, III, Appellant,

v.

Christopher C. WRIGHT, M.D., Respondent.

Appellate Case No. 2010–163726.

No. 5127.

Court of Appeals of South Carolina.

Heard Oct. 30, 2012.

Decided May 1, 2013.

34

Charles J. Hodge and Timothy Ryan Langley, both of Hodge & Langley Law Firm, PC, of Spartanburg, for Appellant.

Andrew F. Lindemann, of Davidson & Lindemann, PA, of Columbia; and Howard W. Paschal, Jr., of Greenville, for Respondent.

KONDUROS, J.

In this medical malpractice action, the Estate of James E. Gibson, III [1] appeals the trial court's (1) admission of summaries as evidence, (2) failure to grant a mistrial after Christopher

---

1. Gibson passed away during the pendency of this appeal, and Jenean Trammell Gibson, as Personal Representative for the Estate, was substituted as the Appellant.

C. Wright, M.D. asked about Gibson's social security benefits, and (3) excluding as hearsay Gibson's questions to Dr. Wright about another doctor's deposition. We affirm.

## FACTS/PROCEDURAL HISTORY

In 2001, Dr. Wright performed heart bypass surgery on Gibson, placing four cardiac wires in him. A few days after surgery, Dr. Wright removed two of the wires from Gibson but left in the remaining two wires. Gibson had problems with his wounds healing, and Dr. Wright referred him to Dr. James Wallace, a plastic surgeon. About five years later, after Gibson continued to have problems, Dr. Wallace performed surgery on Gibson to remove any infection. He also removed the two remaining wires with Dr. Wright's assistance.

In 2008, Gibson filed a complaint, alleging Dr. Wright was negligent in failing to (1) remove cardiac wires from Gibson despite having claimed to do so, (2) x-ray or diagnose the retained wires in a timely manner, (3) provide prompt and proper medical treatment to Gibson, (4) inform Gibson of the danger of leaving retained pacing wires in his chest cavity, and (5) treat Gibson in a reasonable amount of time so as to avoid further injury and damage. Prior to trial, Gibson filed a motion in limine requesting Dr. Wright not mention any collateral source such as insurance, social security disability, and workers' compensation. During Dr. Wright's cross-examination of Gibson, Dr. Wright asked him if he was receiving police officer's and social security disability. Gibson objected and moved for a mistrial. Following a lengthy discussion on the matter, the trial court denied Gibson's motion for a mistrial but gave the jury a curative instruction.

Later during trial, Gibson objected to Dr. Wright's using summaries of evidence, which were timelines, as PowerPoint slides to aid his examination of witnesses. Gibson argued he had not received enough time to review all of the slides and of the ones he had reviewed, many contained mistakes or were not objective. The parties debated the matter, and the trial court ultimately allowed Dr. Wright to use the slides, excluding some of the slides and allowing others. The trial court allowed Gibson some time to review the slides, although less time than he had requested.

During Dr. Wright's testimony, Gibson attempted to question him about a deposition Dr. Wallace gave regarding whether Dr. Wallace knew the wires had not been removed. Dr. Wright objected, arguing it was hearsay. After extensive arguments by both sides, the trial court granted the motion to exclude the deposition.

Following the conclusion of testimony, the jury found in favor of Dr. Wright. Gibson filed post-trial motions alleging the trial court erred in allowing the summaries to be used, failing to grant a mistrial after Dr. Wright violated the motion in limine agreement, and not allowing Gibson to introduce Dr. Wallace's deposition in cross-examining Dr. Wright. The trial court denied the motions. This appeal followed.

## I. EVIDENTIARY SUMMARIES

■■■ Gibson argues the trial court erred in allowing Dr. Wright to present inaccurate summaries to the jury based on documents not produced to Gibson until days prior to trial, thus violating Rule 1006, SCRE. We disagree.

> Demonstrative evidence includes items such as a photograph, chart, diagram, or video animation that explains or summarizes other evidence and testimony. Such evidence has secondary relevance to the issues at hand; it is not directly relevant, but must rely on other material testimony for relevance. Demonstrative evidence is distinguishable from exhibits that comprise "real" or substantive evidence, such as the actual murder weapon or a written document containing allegedly defamatory statements.

*Clark v. Cantrell,* 339 S.C. 369, 383, 529 S.E.2d 528, 535 (2000).

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation, *provided the underlying data are admissible into evidence.* The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

Rule 1006, SCRE (emphasis added).

■■■ "[T]he standard for merely showing or exhibiting demonstrative evidence ... would not be higher than the

standard for actually admitting demonstrative evidence." *Davis v. Traylor*, 340 S.C. 150, 156–57, 530 S.E.2d 385, 388 (Ct.App.2000). "The trial court has broad discretion in the admission or rejection of evidence and will not be overturned unless it abuses that discretion." *Id.* at 157, 530 S.E.2d at 388. "To warrant a reversal based on the admission of evidence, the appellant must show both error and resulting prejudice." *Conway v. Charleston Lincoln Mercury Inc.*, 363 S.C. 301, 307, 609 S.E.2d 838, 842 (Ct.App.2005).

 "[C]ounsel may use a blackboard during jury argument to illustrate points that are properly arguable or to bring to the jury's attention facts or figures properly revealed by the evidence." *Edwards v. Lawton*, 244 S.C. 276, 277, 136 S.E.2d 708, 708 (1964).

> There is no impropriety in counsel's use of a blackboard, during his argument to the jury, for the purpose of fairly illustrating points that are properly arguable. Calculations made, or diagrams drawn, thereon are of course not evidence. Like statements of counsel in oral argument, they should have reasonable foundation in the evidence or in inferences fairly arguable from the evidence. Just as oral argument may be abused, so may such visual argument; and its abuse may be so flagrant as to require a new trial. Control of the arguments of counsel, with regard to the use of such visual aids, as with regard to oral statements, rests in the sound discretion of the trial judge.

*Id.* at 277–78, 136 S.E.2d at 708–09 (citations and internal quotation marks omitted).

In one of the federal cases to which Gibson cites, the party who sought to introduce summary exhibits as evidence under Rule 1006, FRE, appealed the trial court's denial of the introduction of the evidence. *Air Safety, Inc. v. Roman Catholic Archbishop of Boston*, 94 F.3d 1, 6–7 (1st Cir.1996). The trial court did not allow the evidence because the party had not brought the documents from which the summaries were drawn and the opposing party had not seen the documents, despite having access to the documents. *Id.* at 7–8. The opposing party contended the party introducing the exhibits had previously only provided "skeleton exhibits" and had not identified them as summaries until the final pretrial

conference. *Id.* at 7–8 & 7 n. 15. The following day, opposing counsel requested the underlying documents. *Id.* at 7 n. 15. Prior to that, the opposing party had signed two pretrial memoranda without noting a problem with the exhibits. *Id.* at 7–8. Based on that, the party believed the opposing party had no problem with the exhibits and did not bring the documents to town for the trial. *Id.* at 8. The court also noted the trial "court allowed [the party] to use the exhibits as chalks[2], and they were relied on heavily during the testimony of its damages expert. The expert . . . testified to the specific amounts contained in the summaries while the jury was able to peruse the chalks." *Id.*

When Dr. Wright sought to use a timeline while cross-examining Gibson, Gibson objected. Dr. Wright stated he wanted to use the timeline to

> save time and put it in the most expeditious and the best way for the jury to understand it is that I'm taking records that have been provided to the other side that has some reference, either to an instruction for noncompliance or either a failure to comply with the doctor's orders. We have taken that and put it on a timeline so we could play it to the jury in the quickest and the most, uh, and the most easiest form for them to understand for the convenience.

Gibson stated he had not received the final notebook of documents Dr. Wright intended to use at trial until the Friday prior to the trial. Dr. Wright countered that the documents had always been available for Gibson's review. Gibson informed the court as to which records he had objections in regards to the timeline. He argued some of them were subjective. Additionally, he argued others should not be allowed because they were already in evidence or were cumulative. He also argued some were not relevant. The trial court ruled on the objections, sustaining some of them and overruling others. The trial court found some of Gibson's issues with the documents went to the weight of the document. Gibson also raised an issue with Dr. Wright only using an excerpt, instead of the whole document. Gibson argued he could not read much of the document apart from the portion

---

**2.** "Chalks" is a term used to refer to demonstrative jury aids. *See United States v. Milkiewicz,* 470 F.3d 390, 394 (1st Cir.2006).

40

Dr. Wright was using. In response, the trial court stated, "That's a different battle than the one you told me you are wanting to fight right now." The trial court further stated:

I'm looking at this from the point of view of whether or not these excerpts ought to be able to be put up on that slide and shown to the jury. In order for them to do that, they have to be in evidence already or what we've come to now is they are going to have to be subject to some kind of vetting by you because of the number of records, and just to be fair to you, to give you the opportunity to look through each one and make objections because you agreed only to their authentication, you didn't agree to their admissibility. But what is not really before me is records that he's not going to use but you want to exclude [them] based on the fact that you can't read them.

The court acknowledged it could not read the handwriting either, and then asked Gibson how the documents could prejudice him if they were not legible.

The following morning, Gibson argued information Dr. Wright was showing through the PowerPoint presentation was inaccurate and did not contain the full record. He argued "words have been added, words have been interpreted, references and inferences have been [remainder of sentence omitted from the record.]" Gibson argued that Dr. Wright was being allowed to fabricate the record by having slides that only displayed parts of a document. The trial court found Gibson could challenge Dr. Wright's interpretation on cross-examination. The trial court asked Gibson why he could not put in the record himself if he believed it was an inaccurate translation and let the jury decide. Gibson argued if the timeline was seen by and presented to the jury, then it became evidence.

Gibson argued it had taken him five hours to read ten pages of the slides. Dr. Wright stated the documents the Power-Point slides were based on were in evidence. The court questioned Gibson on the difference between the PowerPoint and a chalkboard. Gibson responded that an exact quote would not be a problem but that an interpretation would be. The court countered it would be the opposing attorney's role to point that out to the jury. Gibson asked for a recess for a

day to review the remainder of the slides because it would take him fifteen hours to examine the ninety slides. Dr. Wright informed the court he had subpoenaed an expert witness who was not available for much longer.

The court stated it would give Gibson ample time to review the documents and after they had finished with two witnesses, court would resume in the morning. Gibson indicated he could not be prepared on the documents by the following morning. He requested the court give him until Monday to prepare. He said he had fifty-three slides to check, corresponding to 180 pages. The court asked Gibson if he would need the additional time to prepare if Dr. Wright were not using the PowerPoint and Gibson responded that he would not. The court stated it did not understand the difference because the slides would not be in evidence, and it would instruct the jury accordingly. Gibson informed the court the slides would have an enormous visual impact on the jury.

Dr. Wright informed the court he was already keeping Dr. Peter Smith, Chief of Cardiothoracic Surgery at Duke University, over one night. The court said it was thinking of adjourning court until Monday morning. Dr. Wright informed the court that he did not know if he could get Dr. Smith back to court on Monday. The trial court was bothered Gibson received the materials on Friday and did not raise an objection until the following Wednesday, but it was also bothered by how small the PowerPoint was that he was delivered. Dr. Wright stated that if the trial continued at noon the following day, he could still present his witness. Gibson informed the court that would not be enough time for him to get through his preparation on the slides. The court ruled it would allow Dr. Wright to present Dr. Smith as a witness, using the PowerPoint presentation, the following day with court beginning at noon. Court ended for the day around 6 p.m.

When court began the next day, Gibson informed the court Dr. Wright told him that morning the PowerPoint slides had been revised. Gibson stated that many of the slides with the very small print were missing from the bigger revised slides. Dr. Wright informed the court he did not add any slides, removed slides he thought might cause controversy, corrected any mistakes he noticed, and cut the number of slides in half.

42

Gibson raised objections to specific slides, arguing material was included on the slides that was not included in what was given to him before trial. Dr. Wright countered that he was not going to introduce those specific slides. Dr. Wright informed the court he only had six pages he wished to reference and maybe they could just go through those pages. As Dr. Wright informed the court of the pages, Gibson made his objections to those pages. The court overruled some, sustained others, and found many of Gibson's issues went to the weight of the slide. Dr. Wright then presented Dr. Smith as a witness. After a weekend long break, trial resumed the following Monday. Later, at the beginning of Dr. Wright's testimony, the trial court instructed the jury:

I told you that evidence consists of two things, first is witness testimony and the second is exhibits. Uh, you're about to see, as I understand it, some PowerPoint slides. These PowerPoint slides are not evidence. They are not exhibits. They're certainly not witnesses. They are simply a device or aid the lawyer's using to display or highlight portions of the evidence.

You're instructed that the only person's recollection and interpretation of the evidence that counts [i]s yours. The PowerPoint slides or other demonstrative aid that may be used in this trial that are prepared by a party are subject to whatever interpretation you feel appropriate based on your independent view of the evidence. It is for you to decide whether the slides correctly and accurately present the information set for in the exhibits upon which they are based. If the actual underlying evidence or your interpretation of it differs from what is displayed on the slide, the actual evidence or your interpretation controls. In any event, you are not considering the slides as independent evidence.

The record contains Gibson's objections to specific slides. The trial court sustained some of the objections and overruled others. In Gibson's appellate brief, he references some of these objections. However, he argues the trial court erred in allowing Dr. Wright to use the slides at all. The slides themselves were not admitted as evidence. The trial court heard Gibson's objections to each slide. The trial court also gave Gibson additional time to review the slides. Accordingly,

the trial court did not abuse its discretion in allowing Dr. Wright to use the slides. Further, Gibson does not identify any slides or errors on the timeline to which he would have objected at trial if he had more time to examine them. Therefore, even if the trial court's allowing the slides was in error, Gibson has not demonstrated how he was prejudiced by not receiving as much time as he requested.

## II. MISTRIAL

Gibson asserts the trial court erred in denying his motion for a mistrial based on Dr. Wright's violation of the motion in limine excluding social security disability, workers' compensation, and insurance. We disagree.

"A litigant cannot complain of prejudice by reason of an issue he has placed before the court." *Frazier v. Badger,* 361 S.C. 94, 104, 603 S.E.2d 587, 592 (2004). The door-opening doctrine applies in both criminal and civil cases. *Floyd v. Floyd,* 365 S.C. 56, 92, 615 S.E.2d 465, 484 (Ct.App. 2005), *overturned on other grounds by* 2008 S.C. Acts 211, § 1 (adding section 62–1–110 to the South Carolina Code, providing communications between a lawyer and a fiduciary are subject to the attorney-client privilege unless waived by the fiduciary, even if fiduciary funds were used to compensate the lawyer).

> The primary purpose for the rule is that of fairness and completeness of the information for making the decision. If a party chooses to forego the protection of a rule by introducing evidence the opposing party would not be permitted to go into, then it is unfair not to allow the opposing party to go into the matter and provide more information to the fact-finder.

*Id.* (quoting Danny R. Collins, *South Carolina Evidence* 2.9 (2d ed.2000)).

"Whether a motion for mistrial should be granted is within the trial judge's sound discretion, and the trial judge[']s ruling will not be disturbed unless an abuse of discretion is shown." *Frazier,* 361 S.C. at 104, 603 S.E.2d at 592.

> When objection is timely made to improper remarks of counsel, the judge should rule on the objection, give a

curative charge to the jury, and instruct offending counsel to desist from improper remarks. If the judge takes these steps, and the initial objecting party is not satisfied with the instruction, a further objection and a request for a further instruction should be made at that time. If the objecting party fails to make this additional objection, the asserted misconduct of counsel is not preserved for review on appeal.

*McElveen v. Ferre,* 299 S.C. 377, 381, 385 S.E.2d 39, 41 (Ct.App.1989) (citations omitted).

 "The collateral source rule provides that compensation received by an injured party from a source wholly independent of the wrongdoer will not reduce the amount of damages owed by the wrongdoer." *In re W.B. Easton Constr. Co.,* 320 S.C. 90, 92, 463 S.E.2d 317, 318 (1995). "This rule has been liberally applied in South Carolina to preclude the reduction of damages." *Id.* (citing *Otis Elevator v. Hardin Constr. Co.,* 316 S.C. 292, 450 S.E.2d 41 (1994) (contractual right to indemnification not defeated by fact that loss was actually paid by an insurance company); *Rattenni v. Grainger,* 298 S.C. 276, 379 S.E.2d 890 (1989) (tortfeasor's liability for damages not reduced by underinsurance proceeds); *Powers v. Temple,* 250 S.C. 149, 156 S.E.2d 759 (1967) (tortfeasor's liability for damages not reduced by disability payments from employer); *New Found. Baptist Church v. Davis,* 257 S.C. 443, 186 S.E.2d 247 (1972) (tortfeasor's liability for damages not reduced by value of gratuitous repairs)). "The only requirement for qualification as a collateral source is that the source be 'wholly independent of the wrongdoer.'" *Id.*

In presenting his motion in limine to the court, Gibson stated:

The motion in limine, Your Honor, is standard. It's really aimed towards collateral source. It will be difficult for both parties to avoid that in references. I know that [Dr. Wright] is not going to do it intentionally. We're sure not going to try to do it intentionally. If it comes in, you know, it's one of those no harm, no foul things, but I wanted to have the motion in there just in case some witness get[s] on there and really tried to enunciate the collateral source. So if [Dr. Wright] could tell his witnesses not to talk about insurance, and I'll tell my witnesses not to talk about

insurance, Social Security disability, Worker's Compensation and all that.

The trial court responded, "Okay." Dr. Wright agreed and stated: "As long as it doesn't come up—as long as it doesn't become an issue. I got [sic] no intentions of bringing it up." The court then stated, "All right."

During Dr. Wright's cross-examination of Gibson, Dr. Wright asked, "And that you, in fact, told [the social worker] at that time you had no financial problems?" and Gibson responded, "I don't remember that." Dr. Wright then asked "But you talked about your financial problems, you are on police disability?", and he answered, "Yes." Dr. Wright continued, "And Social Security disability?". Gibson objected, and the trial court took up the matter outside the jury's presence. Gibson moved for a mistrial, stating:

> This question was not something that he volunteered. This is something that [Dr. Wright] spit out in complete violation of the Court's ruling on our motion in limine which specifically address[ed] those very questions. He just blurted it out. It's out in front of the jury now. It's a collateral source. It's clearly inadmissible.

The court found:

> My memory of the motion in limine was that y'all made it, uh, and both sides, uh, acknowledged that it was going to be hard to avoid some possible issue with collateral source because of this. I don't remember an exact ruling. But if I did make a ruling, I stand corrected.

The court made Gibson's written motion in limine Court's Exhibit 3.[3]

Dr. Wright argued he had to ask about Gibson's disability income because Gibson had continued to represent to the jury he had no income. Dr. Wright also argued his questions did not refer to a collateral source because it was police disability and social security benefits for an injury to Gibson's arm. Gibson responded he would now have to present evidence of the source and amounts of money that Gibson claimed was stolen from him by his caregiver. Dr. Wright stated Gibson

---

3. The exhibit is not included in the record on appeal.

had already presented testimony about his caregiver stealing his money.

The trial court stated, "I don't understand why you say it's collateral source.... [N]obody's going to show that your damages were—should be reduced by some payment he received." The court noted Gibson receives police disability and social security benefits regardless of his injuries here. The trial court found "the reference by itself is not enough to warrant a mistrial.... I can instruct the jury to disregard, uh, the reference. I'll be glad to consider any curative instruction [Gibson] wishes to propose." Gibson said it took exception to the court's analysis. After further discussion, the court stated it was willing to give a curative instruction but understood if Gibson did not want one. Gibson asked the court to hear the instruction and asked to draft a curative instruction for the court's consideration. After the court gave him some time to craft one, he stated, "I just accept whatever curative instruction the Court wants to give."

The court instructed the jury:

[Y]ou will recall that when we started the case, I told you that it's your job to determine the facts of this case. You remember that I told you that you have to determine the facts from the evidence and not take into account anything that is not evidence.

There was, uh, shortly before we broke, a reference to, uh, Social Security and, I believe, disability. That has nothing to do with the claims involved in this case. It should not have been referenced. It's not part of the evidence in this case. It's been stricken from the record. You are not to take it into account or give it any weight whatsoever, discuss it, let it cross your mind or take it into consideration in any manner. I repeat to you and emphasize to you, under your oath, you are not to take that question into account, that reference into account. It's no longer part of the evidence of record in this case.

The parties' agreement at the start of trial on the motion in limine was not very concrete. Dr. Wright agreed he would try to stay away from the matter if it did not become an issue. Gibson acknowledged it would be difficult to avoid mentioning it. The mention of the matter was very short. Further, the

mention did not violate the collateral source rule because it was regarding an unrelated injury. Therefore, the mention of disability was minor and any prejudice was cured by the trial court's curative instruction. Accordingly, the trial court did not abuse its discretion in denying the motion for a mistrial.

## III. DEPOSITION

■ Gibson maintains the trial court erred by excluding as hearsay Gibson's cross-examination of Dr. Wright regarding the deposition of Dr. Wallace. We disagree.

■ The admission of a deposition is an evidentiary issue that requires the trial court to exercise its discretion, and we will not disturb the trial court's decision unless we find an abuse of discretion. *Paschal v. Causey,* 309 S.C. 206, 210, 420 S.E.2d 863, 866 (Ct.App.1992); *see also Conway v. Charleston Lincoln Mercury Inc.,* 363 S.C. 301, 307, 609 S.E.2d 838, 842 (Ct.App.2005) ("The decision to admit or exclude evidence is within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.").

The South Carolina Rules of Civil Procedure allow the admission of depositions at trial

against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, *in accordance with any of the following provisions:*

(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of *deponent* as a witness, or for any other purpose permitted by the rules of evidence.

. . . .

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

(A) that the witness is dead; or

(B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the State, unless it appears that the absence of the witness was procured by the party offering the deposition; or

(C) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or

(D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or

(E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

Rule 32(a), SCRCP (emphases added).

Gibson argues the federal and state version of the rule are "essentially the same."

The Federal Rules of Civil Procedure that allow the use of deposition testimony in place of live testimony "have not changed the long established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not available to testify in person."

*Loinaz v. EG & G, Inc.*, 910 F.2d 1, 8 (1st Cir.1990) (quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2142 (1970)).

In *Richland County v. Carolina Chloride, Inc.*, 382 S.C. 634, 644, 677 S.E.2d 892, 897 (Ct.App.2009), *aff'd in part, rev'd in part on other grounds*, 394 S.C. 154, 714 S.E.2d 869 (2011), a party attempted to admit excerpts of a deposition, arguing the deponent "qualified as an officer, director, or managing agent under Rule 32(a)(2), SCRCP." The court found, "If not admissible under Rule 32(a)(2), [the party] needed to demonstrate [the deponent] was unavailable pursuant to Rule 32(a)(3), SCRCP, or alternatively, if [the deponent] was available, [the party] should have called him as a witness at trial." *Id.*

Rule 32(a)(1) allows a deposition to be used to impeach a deponent or for any other purpose permitted by the rules of evidence. Gibson was not seeking to admit the deposition to impeach the deponent, Dr. Wallace; he was attempting to admit it to impeach Dr. Wright. Additionally, Dr. Wallace was not unavailable as provided by 32(a)(3) and actually testified at trial. Gibson does not provide for what purpose the deposition is allowed under the rules of evidence but stops the reading of 32(a) before "in accordance with any of the

following provisions." Accordingly, the trial court did not abuse its discretion in excluding the deposition.

## CONCLUSION

The trial court did not abuse its discretion in allowing the timeline summary, and further, Gibson has not shown he was prejudiced by it. Additionally, the trial court did not err in denying his motion for a mistrial. Finally, the trial court did not err in not allowing excluding Dr. Wallace's deposition during Dr. Wright's testimony. Therefore, the trial court is

**AFFIRMED.**

SHORT and LOCKEMY, JJ., concur.